ARTHUR S. KELLEY & others *vs.* BOARD OF REGISTRATION
IN OPTOMETRY.

Suffolk.    May 4, 1966. — June 20, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Optometry. Optician. Equity Jurisdiction,* Declaratory relief, Optometry, Optician.

The record in a suit in equity by opticians against the Board of Registration in Optometry for a declaratory decree under G. L. c. 231A, as to whether opticians could legally fit contact lenses to human eyes, did not disclose facts making c. 231A available to the plaintiffs where it merely appeared that in answer to a request from the defendant the Attorney General had rendered an opinion that the fitting of contact lenses constituted the practice of optometry as defined in c. 112, § 66, and could not be done by persons other than registered optometrists, physicians or

---

surgeons, and that thereafter the defendant board, which had no power to regulate the activities of opticians, had taken no action in the matter other than to suggest by letter to the Board of Registration of Dispensing Opticians that it "had an obligation to notify its registrants of the contents and of the import of the opinion."

BILL IN EQUITY filed in the Superior Court on July 1, 1965.

The defendant appealed from interlocutory decrees entered by *Kalus*, J., and from a final decree entered by *Macaulay*, J.

*David Berman*, Assistant Attorney General, for the Board of Registration in Optometry (*James D. St. Clair*, for the Massachusetts Society of Optometrists, amicus curiae, with him).

*Joseph G. Crane* for the plaintiffs.

REARDON, J. The plaintiffs seek a declaratory decree under G. L. c. 231A. The defendant filed a plea in bar which was dismissed in an interlocutory decree. The defendant, having been given leave to file a demurrer, did so. The demurrer was overruled by a second interlocutory decree, whereupon the defendant filed an answer. Subsequent to trial a final decree was entered for the plaintiffs with a report of material facts and rulings of law. The case is here on appeals from the final and interlocutory decrees.

The problem which the case brings to us is whether the fitting of contact lenses should be performed only by physicians, surgeons and optometrists, trained as such (see G. L. c. 112, § 68), or whether such fittings may properly be performed also by opticians, who have substantially less and different training (see G. L. c. 112, § 73E). General Laws c. 112, § 66, in a broad definition of what constitutes the practice of optometry, includes the activity of fitting contact lenses. Section 68 of the same chapter provides that only a licensed optometrist may practise optometry, and § 72A of that chapter sets out criminal penalties for the unlicensed practice of optometry. General Laws c. 112, § 73, however, says in effect that § 72A penalties are not applicable to opticians engaged in rendering their services. Section 73C (St. 1955, c. 688, § 2) enumerates those services

in defining a "dispensing optician" as "a person who prepares and dispenses lenses, spectacles, eyeglasses and appliances thereto to the intended wearer thereof on written prescriptions from a duly registered physician or optometrist, and, in accordance with such prescriptions, interprets, measures, *adapts, fits and adjusts such lenses,* spectacles, eyeglasses or appliances thereto *to the human face* for the aid or correction of visual or ocular anomalies of the human eyes" (emphasis supplied).

The individual plaintiffs are representative members of the Massachusetts Association of Retail Dispensing Opticians, "a voluntary association composed of members too numerous to be made parties, all of whom are registered opticians . . . licensed to practice as such under the laws of the Commonwealth of Massachusetts." The corporate complainant has been "operating as a prescription optician since 1870 and fitting contact lenses since prior to 1930." On June 9, 1965, in answer to a request from the defendant Board of Registration in Optometry (the board), the Attorney General rendered an opinion that (1) the fitting of contact lenses to the human eye constituted the practice of optometry as defined by G. L. c. 112, § 66, and (2) persons who were neither registered optometrists, physicians or surgeons could not lawfully fit contact lenses to the human eye. Shortly thereafter this bill was brought alleging that "opticians . . . have been fitting and adapting contact lenses for many years . . ." and that, as a result of the opinion of the Attorney General, "a controversy has arisen as to whether a duly licensed optician . . . may properly fit and adapt contact lenses upon prescription. Reports of the aforesaid opinion . . . have been . . . published in newspapers having wide circulation in this Commonwealth; the . . . [board is] threatening further to advise the public, on the basis of the aforesaid opinion . . . that your complainants may not lawfully fit contact lenses to the human eye; and the . . . [board is] threatening to take action to obtain enforcement or implementation of . . . the aforesaid opinion . . .." The defendant board's plea in bar al-

leged that it had neither taken action to enforce G. L. c. 112, §§ 66–73, as construed in the opinion nor threatened to do so. Evidence at the hearing on the plea in bar indicated merely that the board had "voted . . . to release the . . . opinion . . . to the public" and to suggest to the Board of Registration of Dispensing Opticians that it "had an obligation to notify its registrants of the contents and of the import of the opinion." A letter making such a suggestion to the Board of Registration of Dispensing Opticians was put in evidence. There was an agreement between the parties that no action other than this was taken by the defendant. It does not appear that there was a release of the opinion, that there were notifications to the press, or that the board in any way encouraged the Attorney General to enforce the opinion.

The demurrer filed by the board alleged that the plaintiffs (1) lacked standing to bring the bill, (2) failed to state a claim upon which relief could be granted, (3) failed to state adequate facts, (4) failed to join all necessary parties, (5) failed to allege that they had exhausted their administrative remedies, (6) were proceeding against a party which had no power to enforce the Attorney General's opinion, (7) had brought their bill prematurely, and (8) were attempting to determine the validity of future acts of a public body. The demurrer was overruled.

The board then filed an answer containing a general denial of the essential allegations of the plaintiffs' bill and specifically denying that it was "threatening to take action to obtain enforcement or implementation of G. L. c. 112, §§ 66–73, as construed in the opinion of the Attorney General . . . ."

At the trial there was evidence that some opticians devote themselves exclusively to the fitting of contact lenses, and that it is the general practice of opticians to do contact lens work on prescription from physicians and optometrists, a practice even before 1955, the date when G. L. c. 112, § 73C, was enacted. There was evidence as well regarding the technical nature of the process of fitting contact lenses.

In his report of material facts the judge noted that there had been no evidence of either "newspaper circulation of . . . the opinion nor of the threats of the enforcement" but said, "It is obvious that if . . . [the opticians] are forbidden to continue, they will suffer harm, and if . . . they continue . . . to adapt and fit contact lenses and if it is ultimately determined that physicians and optometrists are the only ones that can do so . . . [the opticians] may be subject to the criminal penalties for practising optometry as set forth in G. L. c. 112, § 72A. It is ruled that an actual controversy exists . . . ." The judge went on to make findings as to what the fitting of contact lenses entailed and to construe the relevant statutes. He ruled that G. L. c. 112, §§ 66, 68, 73 and 73C, had been incorrectly interpreted by the Attorney General in his opinion and that, taken together, the several sections permitted the fitting of contact lenses by duly licensed dispensing opticians.

1. This problem has been before us on another occasion. In 1959, in the case of *Massachusetts Soc. of Optometrists* v. *Waddick,* 340 Mass. 581, 582, the optometrists, plaintiffs in that case, alleged that the opticians were engaged in the unlawful practice of optometry by fitting contact lenses, that such conduct was a public nuisance, and that it harmed the plaintiffs by diminishing the reputation of optometrists. The court there said, "No facts are stated as to actual or imminent competition or interference with the plaintiffs' practice . . . from which it could be found that unless relief is granted the right of the plaintiffs to practise will be impaired to a material degree." Further, criminal "penalties [are] provided by §§ 72A and 73A. It is plain that, so far as preventing harm to the public is concerned, the object of these suits is to enforce these penal statutes by injunction. This we have held is not within the jurisdiction of equity. . . . The remedy by criminal prosecution is said to be complete. The right of the plaintiffs to maintain their suits is not enhanced by calling the illegal practice of the defendants a nuisance. If it were such . . . the Attorney General is the proper person to procure its abatement" (pp. 585–586).

This bill is a second endeavor to resolve the problem described above on facts which are not readily distinguishable from those considered in the *Waddick* case. That the Attorney General has rendered an opinion does not, of itself, raise the matter to the dignity of a justiciable controversy. There are currently in force statutes which provide substantial penalties for the illegal practice of optometry. See *Massachusetts Chiropractic Laymen's Assn. Inc.* v. *Attorney Gen.* 333 Mass. 179, 180. See also *Commonwealth* v. *Antonio,* 333 Mass. 175.

2. While it has been held that it is proper to bring a suit against a party which can regulate the plaintiff's activities, *Hall-Omar Baking Co.* v. *Commissioner of Labor & Indus.* 344 Mass. 695, 697 (licensing director), *Pioneer Credit Corp.* v. *Commissioner of Banks,* 349 Mass. 214, 218–219 (licensing commissioner), such is not this case. The board has no power to regulate the activities of opticians and indeed there is no showing that it has attempted to encourage others to do so except in so far as the letter which it dispatched to the Board of Registration of Dispensing Opticians may be so construed. There is no evidence of there having been harm to the opticians' practice. There is no evidence that the Attorney General has acted upon the opinion. If the activity of the optician in fitting contact lenses is an illegal practice and, as such, a nuisance, the Attorney General is the proper person to proceed in abating it. *Massachusetts Soc. of Optometrists* v. *Waddick,* 340 Mass. 581, 585–586. See *Dartmouth* v. *Silva,* 325 Mass. 401, 404.

In sum, the declaratory judgment statute is not available to the plaintiffs on the facts which have come to us on the record. The interlocutory decrees and the final decree are reversed and a new final decree is to be entered dismissing the bill.

*So ordered.*