2002 ND 134

**Terry ZIEGELMANN, on behalf of himself and all those similarly situated as members of a class, Plaintiff and Appellant,**

v.

**DAIMLERCHRYSLER CORPORATION, Defendant and Appellee.**

**No. 20020041.**

Supreme Court of North Dakota.

Aug. 15, 2002.

are cited to because the hearing before the Bureau in this case took place prior to August 1, 2001.

Kim E. Brust (argued), Conmy Feste, Ltd., Fargo, N.D., David A. Domina (on brief) and Cletus W. Blakeman (on brief), Domina Law, P.C., Omaha, NE, and James I. Seifter (on brief), Kaplan & Seifter, Atlanta, GA, for plaintiff and appellant.

Stephen W. Plambeck (argued), Daniel J. Crothers (on brief) and Joel M. Fremstad (on brief), Nilles, Hansen & Davies, Ltd., Fargo, N.D., Terri Steinhaus Reiskin (on brief) and Michael Kidney (appeared), Hogan & Hartson, Washington, DC, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Terry Ziegelmann, on behalf of himself and all those similarly situated,

appealed from a judgment dismissing with prejudice his putative class action lawsuit against DaimlerChrysler Corporation for failure to state a claim upon which relief can be granted. Because Ziegelmann has not pled a legally cognizable injury, we conclude the trial court did not err in dismissing the complaint. We therefore affirm.

I

[¶ 2] In July 2001, Ziegelmann brought this action on behalf of himself and a purported class of North Dakota owners of model year 1991 through 2000 vehicles manufactured by DaimlerChrysler and its predecessor, Chrysler Corporation, that were equipped with automatic transmissions lacking a park-brake interlock device. A park-brake interlock, also known as a brake-shift interlock, prevents the movement of the transmission from the "park" position to any other gear unless the driver presses the brake pedal. Ziegelmann alleged that, since the early 1990s, "the use of the park-brake interlock has been an industry standard used in almost all vehicles that compete with Chrysler's minivans," and DaimlerChrysler "promotes its vehicles on the basis of safety and emphasizes that [it] goes beyond government minimum safety requirements to ensure that the best available safety devises are used to protect its customers." Ziegelmann alleged Daimler-Chrysler "engaged in a pattern and practice of advertising, marketing and promoting its vehicles, as containing state-of-the-art, current, up-to-date safety features," and it intentionally failed to disclose to consumers that its vehicles did not contain the brake-shift interlock device and fraudulently concealed this fact from himself and other members of the class. Ziegelmann alleged "the absence of the park-shift interlock constituted a material safety risk and a defect which posed risk of

substantial personal injury or death to foreseeable users of the vehicles."

[¶ 3] Ziegelmann's first claim for relief was based on "negligence." He asserted DaimlerChrysler failed to "exercise reasonable care in the design, manufacture, inspection, testing and distribution" of the vehicles; designed, manufactured and distributed vehicles that "were not reasonably and adequately safe"; failed to warn about the absence of the brake-shift interlock; failed to make reasonable inspection to correct the defect; and fraudulently concealed the lack of a brake-shift interlock. Ziegelmann's second claim for relief was based on "fraudulent concealment." He asserted DaimlerChrysler advertised, marketed and promoted its vehicles as containing "state-of-the-art, current, up-to-date safety features, including all safety features reasonably necessary to make them safe, suitable and proper vehicles for their intended use," but that the lack of a brake-shift interlock was contrary to these representations. Ziegelmann sought as damages for he and the members of the class

the (a) diminution in value of their vehicles due to the unsafe, defective and non-merchantable condition of their vehicles, (b) the cost of remedial measures to cure the defect, and (c) compensation for the reasonable rental value of a replacement vehicle during repair of each vehicle.

However, Ziegelmann "expressly disclaim[ed] any intent to seek in this suit any recovery for personal injuries or property damages that have been suffered or that may be suffered by any class member proximately caused by the absence of" a brake-shift interlock device. Ziegelmann did not allege his automatic transmission had malfunctioned, but claimed the absence of the brake-shift interlock device "poses an unreasonable danger to foreseeable users and a substantial compromise to

the safety of owners, operators, users, passengers in each and all such vehicles, and the general public."

[¶ 4] DaimlerChrysler moved to dismiss the action for failure to state a claim upon which relief can be granted under N.D.R.Civ.P. 12(b)(v),[1] and the trial court granted the motion. The court ruled Ziegelmann's claims based on various theories of negligence, fraud and deceit were dismissable because he did not allege actual injury, a necessary element of each of the claims. The court ruled alternatively that the tort actions were nevertheless barred by the economic loss doctrine. *See, e.g., Steiner v. Ford Motor Co.*, 2000 ND 31, 606 N.W.2d 881. The court also ruled the complaint failed to state a claim under North Dakota's false advertising statutes, N.D.C.C. ch. 51–12, and under the consumer fraud statutes, N.D.C.C. ch. 51–15, because no implied private right of action exists under those statutes. Ziegelmann appealed.

## II

[¶ 5] The purpose of a N.D.R.Civ.P. 12(b)(vi) motion is to test the legal sufficiency of the statement of the claim presented in the complaint. *Rose v. United Equitable Ins. Co.*, 2001 ND 154, ¶ 10, 632 N.W.2d 429. In reviewing an appeal from a Rule 12(b) dismissal, we construe the complaint in the light most favorable to the plaintiff, taking as true the well-pleaded allegations in the complaint. *Burke v. North Dakota Dep't of Corr. & Rehab.*, 2000 ND 85, ¶ 4, 609 N.W.2d 729; *Perry Center, Inc. v. Heitkamp*, 1998 ND 78, ¶ 42, 576 N.W.2d 505. Because determinations on the merits are generally preferred to dismissal on the pleadings, Rule 12(b)(vi) motions are viewed with disfavor. *Wells v. First Am.*

*Bank W.*, 1999 ND 170, ¶ 7, 598 N.W.2d 834. Accordingly, a court's scrutiny of the pleadings should be deferential to the plaintiff, *id.*, and the complaint should not be dismissed unless "it is disclosed with certainty the impossibility of proving a claim upon which relief can be granted." *Lang v. Schafer*, 2000 ND 2, ¶ 7, 603 N.W.2d 904. We will affirm a judgment dismissing a complaint for failure to state a claim if we cannot "discern a potential for proof to support it." *Towne v. Dinius*, 1997 ND 125, ¶ 7, 565 N.W.2d 762.

## A

[¶ 6] The trial court phrased the major issue in the case as "[w]hether an alleged product defect that has not manifested itself in such a way as to cause any observable adverse physical or economic harm constitutes an 'injury' that will support" Ziegelmann's claims based on various theories of negligence, fraud and deceit, and concluded it could not.

[¶ 7] In this jurisdiction, the torts of negligence, fraud and deceit require proof of actual damages as an essential element of a plaintiff's case, and if no actual loss has occurred, the plaintiff fails to establish liability. *Olson v. Fraase*, 421 N.W.2d 820, 827 (N.D.1988). *See also Schafer*, 2000 ND 2, ¶ 8, 603 N.W.2d 904; *Schneider v. Schaaf*, 1999 ND 235, ¶ 16, 603 N.W.2d 869; *Thompson v. Goetz*, 455 N.W.2d 580, 585 n. 3 (N.D.1990). Ziegelmann does not dispute that actual damages are an essential element for all of his claims. In concluding Ziegelmann could not establish any actual damages or injury under the allegations of his complaint, the trial court relied on the decision of the United States Court of Appeals for the

---

1. Effective March 1, 2002, a motion to dismiss for failure to state a claim upon which relief can be granted is provided under N.D.R.Civ.P. 12(b)(vi).

Eighth Circuit in *Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir.1999).

[¶ 8]  In *Briehl*, the plaintiffs, a purported class of General Motors ("GM") vehicle owners, sued GM and Kelsey–Hayes ("KH"), the manufacturer of the vehicles' anti-lock braking systems ("ABS"), based on claims for fraudulent misrepresentation, fraudulent concealment, breach of express and implied warranties, and violation of state consumer protection statutes.  The gist of the plaintiffs' complaint was that "GM and KH jointly designed a dangerously defective ABS system, knew that the brakes were defective, concealed this information from the public, and promoted the ABS as a highly effective safety device."  *Briehl*, 172 F.3d at 626.  The ABS system was defective, according to the plaintiffs, because of the "pedal-to-the-floor" phenomenon, which occurred when the brakes were pressed, and was " 'completely counter-intuitive to how an average driver is conditioned to respond when a hard braking maneuver is attempted.' "  *Id.* Although a "reasonable inspection of the driving characteristics of an ABS-equipped vehicle will reveal the tendencies of ABS braking," and the plaintiffs did not allege that "the ABS is incapable of stopping the vehicles or that ABS has violated any national safety standards," the plaintiffs claimed "the 'pedal-to-the-floor' phenomenon constitute[d] a defect because the performance of the brakes cause[d] drivers to react a certain way, and since GM and KH failed to inform GM vehicle owners of the allegedly unsafe condition, GM and KM ha[d] damaged" them.  *Id.* The plaintiffs disclaimed any intent to seek recovery for personal injuries or property damage suffered, or which might be suffered, by any class member, and instead claimed damages for "lost resale value" and "overpayment for the vehicles at the time of purchase."  *Id.*

[¶ 9]  The trial court in *Briehl* dismissed the lawsuit for failure to state a claim upon which relief can be granted under F.R.Civ.P. 12(b)(6), because the plaintiffs did not adequately plead damages.  The Eighth Circuit affirmed:

> In this case, the Plaintiffs have not alleged that their ABS brakes have malfunctioned or failed.  In fact, the Plaintiffs affirmatively state that their purported class excludes any claim for personal injury or property damage caused by brake failure.  The Plaintiffs' ABS brakes have functioned satisfactorily and at no time have the brakes exhibited a defect.  Under each of the theories the Plaintiffs invoke in the Original Complaint, damages constitutes an essential element of the cause of action. . . . Where, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies.  Since the Plaintiffs have failed to allege any manifest defect and their vehicles perform in a satisfactory manner, the District Court was correct when it dismissed the Plaintiffs' Original Complaint.

> While the Plaintiffs affirmatively state that they do not seek damages as a result of actual injury or property damage, they do allege that they have suffered economic harm in the form of lost resale value.  The Plaintiffs insist that they have suffered damage because the ABS systems installed in their vehicles have diminished the vehicles' resale value.  However, the Plaintiffs do not allege in the Original Complaint that any member of the purported class has actually sold a vehicle at a reduced value.  The Plaintiffs also fail to state the amount of their damages.  Apparently, the Plaintiffs seek to set their damages as the difference between a vehicle with the ABS system that they expected and

the system that is actually installed in each of their vehicles.

The Plaintiffs' conclusory assertions that they, as a class, have experienced damages (and the method the Plaintiffs use to calculate the damages) are simply too speculative to allow this case to go forward. The Plaintiffs' assertion that their ABS-equipped vehicles are defective and that they have suffered a loss in resale value as a result of the defect is insufficient as a matter of law to plead a claim under any theory the Plaintiffs have advanced. Even construing all allegations in favor of the Plaintiffs, we find that the District Court was correct when it dismissed the Plaintiffs' Original Complaint for failure to state a claim.

*Briehl,* 172 F.3d at 628–29 (footnote omitted).

[¶ 10] Numerous other federal courts have reached the same conclusion in cases involving various alleged, but unmanifested, defects in automobiles and other products. *See, e.g., Angus v. Shiley Inc.,* 989 F.2d 142, 147–48 (3rd Cir.1993) (footnote omitted) (affirming dismissal on the pleadings of complaint for intentional infliction of emotional distress caused by allegedly defective implanted heart valve which had not malfunctioned and had caused no direct physical harm, because the plaintiff had not "suffered a compensable injury"; "[i]f the Supreme Court of Pennsylvania recognized a cause of action for intentional infliction of emotional distress on the allegations of Angus's complaint, it effectively would sanction a large, if not vast, number of lawsuits by consumers who obtained properly functioning valves"); *Carlson v. Gen. Motors Corp.,* 883 F.2d 287, 289, 298 (4th Cir.1989) (affirming dismissal on the pleadings of plaintiffs' complaint which did not allege that their diesel vehicles were defective, but sought damages based solely on the diminished resale value of their diesel-equipped cars due to their "poor reputation," because the implied warranty of merchantability "clearly does not encompass consumer expectations that a product will hold its value"); *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.,* 155 F.Supp.2d 1069, 1087 (S.D.Ind. 2001) (dismissing on the pleadings claims of plaintiffs who sought to recover for the possibility that their tires will suffer a tread separation in the future because of a defect and for the possibility their vehicles will roll over in the future, or for the lower resale price they might receive resulting from those possibilities, because "[t]hese simply are not cognizable tort injuries"); *Jarman v. United Indus. Corp.,* 98 F.Supp.2d 757, 768 (S.D.Miss.2000) (dismissing on the pleadings plaintiff's claims for common law fraud, negligent misrepresentation, unjust enrichment, breach of warranty, RICO violations, and civil conspiracy resulting from his purchase of allegedly defective termiticide, because plaintiff failed to adequately plead damages; "[U]nless there is actually a failure in product performance, there is no basis at all for claiming that the plaintiff has been damaged in any way. Mere suspicion of a lost bargain ... will not support an award of damages"); *In re Air Bag Prod. Liab. Litig.,* 7 F.Supp.2d 792, 805 (E.D.La.1998) (dismissing on the pleadings claims of plaintiffs, who had not been injured by allegedly defective airbags, because "plaintiffs have failed to advance any allegation of manifest injury or defect, both central tenets of their tort and implied warranty claims"); *Weaver v. Chrysler Corp.,* 172 F.R.D. 96, 100 (S.D.N.Y. 1997) (dismissing on the pleadings the plaintiff's putative class action claiming common law fraud, negligent misrepresentation and breach of implied warranty on behalf of people who purchased vehicles with allegedly defective integrated child safety seats which had not malfunctioned

and seeking as damages the difference between what they paid for the vehicles and what they would have paid had they known of the alleged defect, because an "allegation of possible economic loss fails to plead adequately the required damages element"; "Where, as here, a product performs satisfactorily and never exhibits the alleged defect, no cause of action lies."); *Walus v. Pfizer, Inc.,* 812 F.Supp. 41, 44 (D.N.J.1993) (dismissing on summary judgment plaintiffs' claims for negligence, strict liability, failure to warn, fraud, misrepresentation, and negligent and intentional infliction of emotional distress involving allegedly defective heart valve that had been working correctly since implanted, because "a cause of action based on a claim that a normally functioning product might fail at some unknown time" is not recognized); *Yost v. Gen. Motors Corp.,* 651 F.Supp. 656, 657–58 (D.N.J.1986) (dismissing on the pleadings plaintiff's putative class action alleging breach of warranty and common law fraud due to vehicle engines' tendency to mix oil and water in crank case, although his vehicle had not malfunctioned in any way, and seeking as damages lost value of vehicles in used car market, because plaintiff "has not alleged that he has suffered any damages ... Plaintiff has not apparently attempted to sell his car in the used car market and simply asserts the bald conclusion that its value in that market has decreased").

[¶ 11] State court decisions appear to be in accord. *See, e.g., Ford Motor Co. v. Rice,* 726 So.2d 626, 631 (Ala.1998) (footnote omitted) (affirming dismissal on summary judgment of putative class claims for costs to repair alleged design defect that caused sport utility vehicles to roll over, where none of the vehicles had actually rolled over and caused personal injuries or property damage, because "an alleged product defect that has not manifested itself in such a way as to cause any observable adverse physical or economic consequences [does not] constitute any 'injury' that will support a claim of fraudulent suppression"); *Pfizer, Inc. v. Farsian,* 682 So.2d 405, 406–07 (Ala.1996) (answering certified question and concluding "a heart valve implantee [does not] have a valid cause of action for fraud under Alabama law if he asserts that the valve's manufacturer fraudulently induced him to have the valve implanted when the damages that he asserts do not include an injury-producing malfunction of the product because the valve has been and is working properly"; "Farsian's fear that his valve could fail in the future is not, without more, a legal injury sufficient to support his claim"); *Am. Suzuki Motor Corp. v. Superior Court,* 37 Cal.App.4th 1291, 44 Cal.Rptr.2d 526, 527 (1995) (issuing writ to decertify a class action because no cause of action for breach of implied warranty exists "[w]here class-action plaintiffs allege they have suffered no personal injury or property damage from a vehicle they claim is defectively designed, and it is impliedly conceded that their vehicles have—since the date of purchase—remained fit for their ordinary purpose"); *Yu v. Int'l Bus. Mach. Corp.,* 314 Ill.App.3d 892, 247 Ill.Dec. 841, 732 N.E.2d 1173, 1177 (2000) (affirming dismissal on the pleadings of class action to recover damages arising out of sale of computer software that allegedly was not year 2000 compliant and that may cause potential harm, because "[a]s plaintiff's claims of consumer fraud, deceptive trade practices and negligence require actual injury or damage, we hold that plaintiff's claims constitute conjecture and speculation"); *Verb v. Motorola, Inc.,* 284 Ill.App.3d 460, 220 Ill.Dec. 275, 672 N.E.2d 1287, 1295 (1996) (affirming dismissal on the pleadings of plaintiff's class action claiming breach of express and implied warranties, negligence, strict liability, consumer fraud and

deceptive trade practices based on their purchases of cellular phones emitting potentially harmful radio waves and seeking damages for reduction in value of the phones and for increased risk of personal injury, because no proper allegations of present personal injury or damages was included in the complaint; "plaintiffs' future 'personal injury and damages' claims constitute conjecture and speculation"); *Frank v. DaimlerChrysler Corp.*, 292 A.D.2d 118, 741 N.Y.S.2d 9, 17 (N.Y.A.D. 2002) (affirming dismissal on the pleadings of putative class action for negligence, strict liability, breach of implied warranty, negligent concealment and misrepresentation, fraud, unfair or deceptive trade practices and civil conspiracy based on allegedly defective front seat back rests of certain vehicles and seeking damages for alternate transportation or expense of correcting the defect, because plaintiffs "fail[ed] to plead any actual injury"; "In sum, plaintiffs have not been involved in any accidents and have not suffered any personal injuries or property damage. Moreover, plaintiffs do not allege that any seat has failed, been retrofitted or repaired, nor have plaintiffs attempted to sell, or sold an automobile at a financial loss because of the alleged defect.").

[¶ 12] In *Rivera v. Wyeth–Ayerst Lab.*, 283 F.3d 315 (5th Cir.2002), the United States Court of Appeals for the Fifth Circuit dismissed a nationwide class action by drug purchasers and their insurance companies against drug manufacturers on distinct, yet analogous, grounds. A defendant had voluntarily withdrawn the drug, Duract, from the market after several users had experienced liver failure. In the district court, the plaintiff successfully had certified a class representing persons who had purchased and ingested Duract, but suffered no physical or emotional injury. The class explicitly excluded anyone who had been injured by Duract, and the plain-

tiffs did not claim the drug was ineffective as a pain killer. The plaintiffs sought economic damages under the Texas Deceptive Trade Practices Act, and theories of implied warranty and common law unjust enrichment. On the defendants' appeal from the certification ruling, the court dismissed the action because it did not present a justiciable case or controversy under the United States Constitution's Article III standing requirements due to the lack of an injury in fact:

> Rivera's claim to injury runs something like this: Wyeth sold Duract; Rivera purchased and used Duract; Wyeth did not list enough warnings on Duract, and/or Duract was defective; other patients were injured by Duract; Rivera would like her money back. The plaintiffs do *not* claim Duract caused them physical or emotional injury, was ineffective as a pain killer, or has any future health consequences to users. Instead, they assert that their loss of cash is an "economic injury."
>
> The plaintiffs never define this "economic injury," but, instead, spend most of their brief listing helpful suggestions on how a court could calculate damages. These arguments are relevant (if at all) to redressability, not injury. Merely asking for money does not establish an injury in fact.
>
> Notably, the wrongs Rivera and the class allege are those suffered by other, non-class member patients. The plaintiffs claim that Wyeth violated the implied warranty of merchantability by selling a defective drug, but then aver that the drug was not defective as to them. Similarly, the plaintiffs claim Wyeth violated the DTPA by failing to issue warnings sufficient to advise injured users, but then concede they were

not among the injured. Such wrongs cannot constitute an injury in fact.

*Rivera,* 283 F.3d at 319–20.

[¶ 13] Ziegelmann relies on *Coghlan v. Wellcraft Marine Corp.,* 240 F.3d 449 (5th Cir.2001), in arguing the determination of whether there has been an injury must be an evidentiary one which cannot be determined solely on the pleadings. In *Coghlan,* the plaintiffs contracted to buy a fiberglass fishing boat, but instead received a wood-fiberglass hybrid, which was worth less than a fiberglass boat. The plaintiffs sued the seller for breach of contract, breach of implied warranty, fraud, negligent misrepresentation, and deceptive trade practices, seeking damages equal to the difference in value between what they were promised and what they received. In concluding that the district court acted prematurely in dismissing the case on the pleadings, the court was careful to point out the difference between the case before it and the typical no-injury product liability suit:

> The key distinction between this case and a "no-injury" product liability suit is that the Coghlans' claims are rooted in basic contract law rather than the law of product liability: the Coghlans assert they were promised one thing but were given a different, less valuable thing. The core allegation in a no-injury product liability class action is essentially the same as in a traditional products liability case: the defendant produced or sold a defective product and/or failed to warn of the product's dangers. The wrongful act in a no-injury products suit is thus the placing of a dangerous/defective product in the stream of commerce. In contrast, the wrongful act alleged by the Coghlans is Wellcraft's failure to uphold its end of their bargain and to deliver what was promised. The striking feature of a typical no-injury class is that

the plaintiffs have either not yet experienced a malfunction because of the alleged defect or have experienced a malfunction but not been harmed by it. Therefore, the plaintiffs in a no-injury products liability case have not suffered any physical harm or out-of-pocket economic loss. Here, the damages sought by the Coghlans are not rooted in the alleged defect of the product as such, but in the fact that they did not receive the benefit of their bargain. It is worth noting that the no-injury approach to product litigation has been rejected in several recent decisions.

*Coghlan,* 240 F.3d at 455 n. 4 (citations omitted).

[¶ 14] Unlike the plaintiffs in *Coghlan,* Ziegelmann did not receive a product that was different than what he had contracted to buy. Ziegelmann contracted to buy, and received, a vehicle that was not equipped with a brake-shift interlock device. Ziegelmann's claim is that the absence of a brake-shift interlock is a "defect" which "pose[s][a] risk of substantial personal injury or death to foreseeable users of the vehicles." Ziegelmann's action is a no-injury products liability lawsuit.

[¶ 15] In this case, the parties agreed there is no federal requirement mandating use of a brake-shift interlock device in vehicles. Ziegelmann has not alleged that DaimlerChrysler specifically represented that the vehicles were equipped with a brake-shift interlock device. Ziegelmann has not alleged that his vehicle has actually manifested the alleged defect causing injury or damage. Although Ziegelmann alleged that the alleged defect manifests itself "every time the shift lever is moved without the brake being activated," this is how the vehicle was designed to perform. It is not a manifestation of a defect resulting in dam-

age or injury. Although Ziegelmann also filed an affidavit from a purported member of his putative class whose son allegedly suffered an injury caused by the absence of a brake-shift interlock, the trial court did not consider the affidavit. It is within a trial court's discretion to exclude material outside the pleadings on a motion to dismiss for failure to state a claim. *Stearns v. Veterans of Foreign Wars*, 500 F.2d 788, 791 n. 9 (D.C.Cir.1974); *Entergy Serv., Inc. v. Union Pac. R.R. Co.*, 99 F.Supp.2d 1080, 1082 (D.Neb.2000). There was no abuse of discretion here because "a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir.1987). *See also Bowen v. First Family Fin. Serv., Inc.*, 233 F.3d 1331, 1339 n. 6 (11th Cir.2000); *Church v. City of Huntsville*, 30 F.3d 1332, 1340 (11th Cir.1994); *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir.1981). The allegedly injured class member is not a named plaintiff. Moreover, Ziegelmann expressly disclaimed any intention to seek recovery for personal injuries or property damages suffered by class members, the precise injuries alleged in the affidavit.

[¶ 16] Rather, Ziegelmann seeks damages based on diminution in value of the vehicles caused by the alleged defect, the cost of remedial measures to correct the defect, and compensation for a replacement vehicle during repairs. Yet, Ziegelmann has not alleged that he sold his vehicle at a diminished value because of the absence of a brake-shift interlock, or that he incurred any costs to repair the vehicle. The gist of Ziegelmann's complaint is that the vehicle might malfunction and cause injury in the future. We conclude, like the vast majority of courts that have considered similar no-injury product liability lawsuits, that Ziegelmann's claim of injury is simply too speculative to con-

stitute a legally cognizable tort injury. To the extent Ziegelmann may have legitimate concerns about the safety of these vehicles, his proper remedy is to petition the National Highway Traffic Safety Administration for a defect investigation. *See Rice*, 726 So.2d at 631; *Superior Court*, 44 Cal.Rptr.2d at 531; *Frank*, 741 N.Y.S.2d at 17.

[¶ 17] Because Ziegelmann failed to plead any legally cognizable injury, we conclude the trial court did not err in dismissing the complaint for failure to state a claim upon which relief can be granted.

### B

[¶ 18] In view of our disposition of this case, it is unnecessary to consider the other issues addressed by the trial court and the parties.

### III

[¶ 19] The judgment is affirmed.

[¶ 20] WILLIAM F. HODNY, S.J., ROBERT O. WEFALD, D.J., CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.

[¶ 21] The Honorable Robert O. Wefald, D.J., and the Honorable William F. Hodny, Surrogate Judge, sitting in place of Sandstrom, J., and Neumann, J., disqualified.