2003 ND 202

**Frederick E. SAEFKE, Jr., Petitioner and Appellant**

v.

**Wayne STENEHJEM, Attorney General, State of North Dakota and Richard J. Riha, State's Attorney of Burleigh County, North Dakota, Respondents and Appellees.**

No. 20030202.

Supreme Court of North Dakota.

Dec. 29, 2003.

Rehearing Denied Jan. 21, 2004.

Frederick E. Saefke, Jr., pro se, Bismarck, ND, for petitioner and appellant.

Douglas Alan Bahr, Solicitor General, Bismarck, ND, for respondent and appellee Wayne Stenehjem.

Scott K. Porsborg, Smith Bakke Oppegard Porsborg Wolf, Bismarck, ND, for respondent and appellee Richard J. Riha.

MARING, Justice.

[¶ 1]    Frederick E. Saefke, Jr., appealed from a judgment dismissing his action against Attorney General Wayne Stenehjem and Burleigh County State's Attorney Richard J. Riha. Saefke alternatively petitioned this Court to exercise its supervisory jurisdiction and issue a supervisory writ. We affirm the dismissal of Saefke's claims against Stenehjem and dismiss Saefke's appeal of his claims against Riha, and we decline to issue a supervisory writ.

I

[¶ 2]    Saefke's claims relate to the Burleigh County Commission's financial contributions to the Bismarck–Mandan Symphony Orchestra ["Symphony"] for July 4th celebrations at the capitol grounds. In a January 3, 2002, letter to Burleigh County Commissioner Marlan Haakenson, Riha concluded that, with certain exceptions for distributions to an authorized industry, enterprise, or business of the county which had been established on or before the donation, donations by a political subdivision to private groups were prohibited by N.D. Const. art X, § 18.

[¶ 3]    In a June 27, 2002, response to a letter from Burleigh County Auditor Kevin Glatt, Riha reiterated his opinion about

donations to private groups and concluded a requested donation to the Symphony for the upcoming July 4th celebration would violate N.D. Const. art. X, § 18. On July 1, 2002, the Burleigh County Commission passed a resolution to "officially celebrate the 4th of July and the life of Theodore Roosevelt" and to "initiate its 4th of July Celebration and ensure fire safety by supporting the celebration to take place on the capitol grounds on the 4th of July." Commissioner William Delmore stated "there [was] no money associated with this resolution and added that if we can get people to go to the capitol grounds rather than setting off their own fireworks we reduce the risk of fire, especially with the very dry conditions in the area." The Burleigh County Commission, with Commissioner Haakenson absent, then voted to donate $5,000 to the Symphony for the July 4, 2002, celebration. According to Riha, he was not then asked for an opinion on whether the connection to fire safety made the donation legal.

[¶ 4] On July 3, 2002, Glatt asked Riha for an opinion regarding payment of the $5,000 in view of Riha's June 27, 2002, opinion about the legality of the donation. Riha informed Glatt that he was "obligated to act as the commission directs."

[¶ 5] On August 9, 2002, Riha requested a formal opinion from Stenehjem about donations from 1997 to 2001 to support the July 4th celebrations for those years and about the 2002 donation. In an August 26, 2002, letter to Stenehjem, Burleigh County Commissioner Claus Lembke explained that, before authorizing the donation, the commission had debated and passed a motion making the July 4th celebration an "authorized enterprise or business" of Burleigh County, and the commission followed Riha's advice "to the letter and acted according to his instruction." Lembke's letter indicated Riha "was present during the debate of this issue and never voiced any concern over our actions," and the commission believed it was "following the law and the constitution." On September 24, 2002, Stenehjem issued a formal opinion, concluding the donations were prohibited and any authority for a county to make a donation for an authorized industry, enterprise, or business must be derived from a state law that authorized the donation. Stenehjem's opinion also concluded Riha had discretionary authority under N.D.C.C. § 11–16–01(13) to bring an action to recover any money illegally donated against those individual county commissioners who voted for the donations.

[¶ 6] Riha determined that, in addition to the 2002 donation, $11,000 had been donated to the Symphony from 1997 to 2001. According to Riha, he:

decided to demand on behalf of the county re-payment of the $5,000 contribution made in 2002, in lieu of pursuing past contributions. My rationale for deciding on this compromise was as follows:

1) The commissioners did not personally benefit from the contributions, as opposed to the situation in Grant County.

2) The past contributions were made innocently, before I issued my opinion on the legality of the contributions.

3) A special assistant appointed under section 11–16–07 would have quickly expended far more in county funds than the $11,000 that would eventually be collected. I felt $5,000 was a reasonable compromise, and one the commissioners would accept, thus avoiding costly litigation. The Commissioners who voted for the contribution had already requested that I "appeal" the Attorney General's opinion to the District Court, as they were anxious to have the decision

overturned. I declined.... However-er, it was clear that the Commissioners would vigorously challenge any suit in an attempt to overrule the Attorney General's opinion. I saw little benefit to the County in spending more county funds on a special assistant than the amount that would eventually be collected.

4) In spite of the law on this issue, I felt there was little likelihood of success. The contributions to the Symphony were politically popular, and the only source of recovery for the monies was from the commissioners personally. I felt the fact that none of the commissioners benefited from the contributions made it unlikely a fact-finder would hold them personally responsible for repayment.

[¶ 7] In November 2002, after a donation from a local benefactor, the Symphony refunded $5,000 to Burleigh County, and Riha did not initiate a civil action against the individual commissioners to recover donations made from 1997 through 2001. In December 2002, after a request from Saefke to criminally prosecute the commissioners who voted for the donations, Riha formally referred the matter to Stenehjem for possible criminal proceedings against those commissioners. In December 2002, Stenehjem concluded criminal charges were not warranted and declined to prosecute.

[¶ 8] Saefke commenced this action against Stenehjem and Riha, claiming present and former Burleigh County Commissioners misapplied public funds and asking the district court to (1) overrule Stenehjem's formal opinion that Riha had discretionary authority to prosecute the county commissioners and Stenehjem's December 2002 decision that criminal charges against the commissioners were not warranted, (2) find Riha had neglected his duty, and (3) appoint an attorney under N.D.C.C. § 11–16–06 to prosecute civil and criminal actions against the county commissioners who had voted for the donations. Saefke alternatively sought a writ of mandamus directing Riha to fulfill his duties. The district court dismissed Saefke's action, concluding his complaint failed to state a claim against Stenehjem and Riha had not failed to perform his duties under N.D.C.C. § 11–16–06. Saefke appealed from the judgment dismissing his action and alternatively sought a supervisory writ.

## II

[¶ 9] Saefke asks this Court to overrule Stenehjem's formal opinion that Riha had "discretionary" authority to prosecute the county commissioners, to hold Riha had a "duty" to prosecute the commissioners, and to issue a supervisory writ directing the district court to appoint an attorney to prosecute civil and criminal actions against the county commissioners who voted for the donations.

### A

[¶ 10] Saefke's complaint alleged Stenehjem's "Formal Opinion ... with respect to the State's Attorney having 'Discretion' to act against the Burleigh County Commissioners, civilly and that no criminal charges were warranted, by memorandum, December 23, 2002, were both in error." The district court ruled Saefke's complaint failed to state a claim against Stenehjem under N.D.R.Civ.P. 12(b)(vi).

[¶ 11] The purpose of a N.D.R.Civ.P. 12(b)(vi) motion is to test the legal sufficiency of the claims presented in the complaint. *Ziegelmann v. Daimler-Chrysler Corp.*, 2002 ND 134, ¶ 5, 649 N.W.2d 556. On appeal from a dismissal under N.D.R.Civ.P. 12(b), we construe the complaint in the light most favorable to the

plaintiff, taking as true the well-pleaded allegations in the complaint. *Id.* A complaint should not be dismissed under N.D.R.Civ.P. 12(b) unless it discloses with certainty the impossibility of proving a claim upon which relief can be granted. *Id.* We will affirm a judgment dismissing a complaint for failure to state a claim if we cannot discern a potential for proof to support the complaint. *Id.*

[¶ 12] Saefke's complaint effectively asked the district court for a declaratory judgment to overrule the formal opinion and memorandum of Stenehjem. In *In Interest of McMullen,* 470 N.W.2d 196, 198–99 (N.D.1991), we outlined criteria from *Iverson v. Tweeden,* 78 N.D. 132, 138–40, 48 N.W.2d 367, 370–71 (1951), for obtaining declaratory relief:

> The requisite precedent facts or conditions which the courts generally hold must exist in order that declaratory relief may be obtained may be summarized as follows: (1) there must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectible interest; and (4) the issue involved in the controversy must be ripe for judicial determination.... In order to present a justiciable controversy under the declaratory judgments act, the complaint must allege facts upon which the court can render a judgment or decree that will terminate the controversy or remove an uncertainty....
>
> Among the essentials necessary to the raising of a justiciable controversy is the existence of a genuine conflict in the tangible interests of the opposing litigants. Complainant must prove his pos-

session of a legal interest or right which is capable of and in need of protection from the claims, demands, or objections emanating from a source competent legally to place such legal interest or right in jeopardy. Although complainant need not necessarily possess a cause of action (as that term is ordinarily used) as a basis for obtaining declaratory relief, nevertheless he must, as a minimum requirement, possess a bona fide legal interest which has been, or with respect to the ripening seeds of a controversy is about to be, affected in a prejudicial manner.

[¶ 13] The attorney general is the chief law officer of the state and legal advisor for state officials. *State v. Baker,* 74 N.D. 244, 259, 21 N.W.2d 355, 364 (1945). The attorney general has the statutory duty to issue opinions to state officers and public entities and to consult with and advise the several state's attorneys in matters relating to the duties of their office. N.D.C.C. § 54–12–01(4), (6) and (19). Although courts are not bound by attorney general's opinions, courts will give respectful attention to and follow those opinions if they are persuasive. *Werlinger v. Champion Healthcare Corp.,* 1999 ND 173, ¶ 47, 598 N.W.2d 820. An attorney general's opinion guides officials until superseded by judicial opinion. *Id.* at ¶ 47.

[¶ 14] Other courts have recognized that no justiciable controversy exists in a declaratory judgment action challenging the correctness of an attorney general's opinion. *See Askew v. City of Ocala,* 348 So.2d 308, 310 (Fla.1977); *Kelley v. Board of Registration in Optometry,* 351 Mass. 187, 218 N.E.2d 130, 133 (1966); *Gershman Inv. Corp. v. Danforth,* 517 S.W.2d 33, 35–36 (Mo.1974); *City of Jackson v. Heritage Savings & Loan Assoc.,* 639 S.W.2d 142, 145–46 (Mo.Ct.App.1982).

[¶ 15] Here, Saefke's claims against Stenehjem are not raised in the context of a present actual case or controversy challenging the commission's authority to make donations to the Symphony. *See State ex rel. Sanstead v. Freed*, 251 N.W.2d 898, 902–03 (N.D.1977) (holding justiciable controversy existed because the posture of the case raised a present actual controversy between lieutenant governor and president pro tem of senate about substance of attorney general's opinion). *See also Danzl v. City of Bismarck*, 451 N.W.2d 127, 128–29 (N.D.1990) (allowing a taxpayer to sue to enjoin the City of Bismarck from proceeding with construction project in which City's procedures for awarding contracts allegedly violated competitive bidding statutes). In the absence of a present actual case or controversy challenging the commission's authority to make donations to the Symphony, any resolution of Saefke's claims against Stenehjem about the correctness of Stenehjem's opinion would result in an advisory opinion. Courts do not render advisory opinions. *Nord v. Herrman*, 1998 ND 91, ¶ 12, 577 N.W.2d 782. We conclude Saefke's claims against Stenehjem do not create a justiciable controversy in which a claim is asserted against one who has an interest in contesting the claim. We hold the district court did not err in dismissing Saefke's claims against Stenehjem.

## B

[¶ 16] Saefke's complaint alleged Riha neglected and failed in his duty to stop the illegal donations and to prosecute the county commissioners for a criminal violation. Saefke alleged Riha did not have "absolute" discretion to decline to prosecute the commissioners, rather Riha had a "duty" to prosecute them. Saefke asked the district court to declare Riha had neglected and failed in his duty and to appoint an attorney to prosecute the civil and criminal allegations under the N.D.C.C. § 11–16–06. Saefke alternatively asked the court to issue a writ of mandamus directing Riha to fulfill his duties.

[¶ 17] The district court concluded Riha did not neglect his duties in settling all civil claims against the commissioners for $5,000 and in referring any potential criminal prosecution to the attorney general, who ultimately concluded criminal charges were not warranted. The district court denied Saefke's request it issue a writ of mandamus directing Riha to fulfill his duties.

[¶ 18] In *Wilson v. Koppy*, 2002 ND 179, ¶ 1, 653 N.W.2d 68, we affirmed a district court's denial of a writ of mandamus to compel a state's attorney to prosecute the petitioner's wife and alleged lover for adultery and unlawful cohabitation. We recognized we would not reverse a district court's determination on a mandamus petition " 'unless the writ should not issue as a matter of law or the court abused its discretion.' " *Id.* at ¶ 12 (quoting *Frank v. Traynor*, 1999 ND 183, ¶ 9, 600 N.W.2d 516). We said a petitioner for a writ of mandamus must show both a clear legal right to performance of the act sought to be compelled and there is no other plain, speedy, and adequate remedy in the ordinary course of the law. *Wilson*, at ¶ 13. We concluded, as a matter of law, the petitioner was not entitled to a writ of mandamus because he had a plain, speedy, and adequate remedy available under N.D.C.C. § 11–16–06. *Wilson*, at ¶ 14. *See also Olsen v. Koppy*, 1999 ND 87, 593 N.W.2d 762. Under *Wilson*, we conclude the district court did not err in not issuing a writ of mandamus to Riha.

[¶ 19] In *Olsen*, 1999 ND 87, ¶ 15, 593 N.W.2d 762, we concluded an order under N.D.C.C. § 11–16–06 refusing

to appoint a private attorney to initiate a criminal prosecution was not appealable under N.D.C.C. § 28–27–02. In that case, although the appeal was not authorized by statute, we considered the attempted appeal as a request for a supervisory writ. *Olsen*, at ¶ 16. Under *Olsen*, we conclude the district court's order refusing to appoint a private attorney under N.D.C.C. § 11–16–06 is not appealable, and we consider Saefke's attempted appeal in conjunction with his alternative petition for a supervisory writ.

[¶ 20] We exercise our supervisory jurisdiction only rarely and cautiously to rectify errors or to prevent an injustice. *Mitchell v. Sanborn*, 536 N.W.2d 678, 683 (N.D.1995). In *Olsen*, 1999 ND 87, ¶ 17, 593 N.W.2d 762, we said:

> Our power to issue supervisory writs is discretionary and cannot be invoked as a matter of right. *Sanborn*, 536 N.W.2d at 682–83; *B.H. v. K.D.*, 506 N.W.2d 368, 372–73 (N.D.1993); *City of Fargo v. Dawson*, 466 N.W.2d 584, 585 (N.D.1991); *Odden v. O'Keefe*, 450 N.W.2d 707, 708 (N.D.1990). We exercise our supervisory jurisdiction over lower courts rarely to rectify errors or to prevent injustice where no adequate alternative remedies exist. *Sanborn*, 536 N.W.2d at 682–83; *B.H.*, 506 N.W.2d at 372–73; *Dawson*, 466 N.W.2d at 585; *Odden*, 450 N.W.2d at 708. Our jurisdiction to issue supervisory writs is, in a sense, both appellate and original in character, because supervisory proceedings are independent in nature with process directed to a trial court, but our decision reviews the trial court's judicial act. *See* Burke, 32 N.D.L.Rev. at 199–201 (comparing original supervisory jurisdiction and original jurisdiction to issue prerogative writ in publici juris cases).

[¶ 21] Under N.D.C.C. § 11–16–01(13), state's attorneys shall prosecute criminal proceedings and institute civil proceedings in the name of a county to recover money paid by the county commissioners without legal authority. *See Olsen*, 1999 ND 87, ¶ 18, 593 N.W.2d 762; *Keidel v. Mehrer*, 464 N.W.2d 815, 816 (N.D.1991); *Hennebry v. Hoy*, 343 N.W.2d 87, 90–91 (N.D. 1983); *State ex rel. Ilvedson v. Dist. Court*, 70 N.D. 17, 25, 291 N.W. 620, 624 (1940). In *Olsen*, at ¶ 18, we said a state's attorney is vested with discretion to initiate criminal prosecutions. *See Bell v. State*, 1998 ND 35, ¶ 19, 575 N.W.2d 211; *Mehrer*, at 816–17; *Hoy*, at 90–91; *Ilvedson*, 70 N.D. at 25, 291 N.W. at 624. We have defined an abuse of discretion as acts that are arbitrary, unreasonable, or unconscionable, not the product of a rational mental process leading to a reasoned determination, or a misinterpretation or misapplication of the law. *See, e.g., Langness v. Fencil Urethane Sys. Inc.*, 2003 ND 132, ¶ 9, 667 N.W.2d 596. In *Olsen*, at ¶ 19, we recognized these types of cases effectively involve three tiers of discretion: (1) the state's attorney's discretion to initiate proceedings; (2) the district court's discretion to appoint a private attorney; and (3) our discretion to issue a supervisory writ.

[¶ 22] Here, Riha's affidavit states he investigated and considered whether to bring a civil action against the county commissioners, and he concluded it was appropriate, under the circumstances, to compromise the civil action because of the costs involved in collecting a civil judgment for the remainder of the money paid to the Symphony. Riha's affidavit indicates he investigated and balanced the costs and benefits of bringing a civil action against the likelihood of success. Riha's reasons for not pursuing a civil action are the product of a rational mental process leading to a reasoned determination and support his discretionary decision not to initiate a civil proceeding against the county

commissioners. Morever, Riha's affidavit indicates he referred any potential criminal prosecution to the attorney general, who found there was not "a sufficient factual and legal basis to conclude that the actions of the individual Burleigh County commissioners violated an 'offense' defined by the constitution or statute of this state that would warrant the initiation of criminal proceedings." Under these circumstances, we conclude the reasons advanced by Riha support his discretionary decision not to institute a civil action against the commissioners and his decision to refer any potential criminal prosecution to the attorney general. Those reasons support the district court's decision not to appoint an attorney under N.D.C.C. § 11–16–06. On this record, we decline to exercise our supervisory jurisdiction and issue a supervisory writ.

### III

[¶ 23] We affirm the district court's dismissal of Saefke's claims against Stehnehjem, we dismiss Saefke's appeal from the court's decision denying appointment of an attorney under N.D.C.C. § 11–16–06, and we decline to exercise our supervisory jurisdiction and issue a supervisory writ.

[¶ 24] WILLIAM A. NEUMANN, J., JOHN C. MCCLINTOCK, JR., D.J., EVERETT NELS OLSON, S.J., and DALE V. SANDSTROM, Acting C.J., concur.

[¶ 25] The Honorable JOHN C. McCLINTOCK, JR., D.J., and the Honorable EVERETT NELS OLSON, S.J., sitting in place of KAPSNER, J., and VANDE WALLE, C.J., disqualified.