2013 ND 40

**In the Matter of the ESTATE OF Ardis DIONNE, Deceased.**

**Randall A. Dionne, Cynthia A. Larson, Petitioners and Appellants**

**and**

**James R. Goodness, Appellant**

**v.**

**Norman Dionne, Individually and as Personal Representative of the Estate of Ardis Dionne, Respondent and Appellee.**

No. 20120249.

Supreme Court of North Dakota.

March 18, 2013.

Randall A. Dionne, self-represented, and Cynthia A. Larson, self-represented, petitioners and appellants.

James R. Goodness, self-represented, appellant.

Rebecca S. Thiem (argued) and James S. Hill (appeared), Bismarck, ND, for respondent and appellee.

Bernard Danielson, Larimore, ND, amicus curiae.

VANDE WALLE, Chief Justice.

[¶ 1]   Randall Dionne, Cynthia Larson, and James Goodness appealed from a district court judgment dismissing their petition for formal probate of Ardis Dionne's will, and denying a N.D.R.Civ.P. 60(b) motion to vacate the dismissal of James Goodness's petition to void the personal representative's deed of property to Norman Dionne in a previous action.   We affirm.

I.

[¶ 2]   Ardis Dionne died in 1998 in Hawaii, where she resided at the time.   Her six children survived her: Linda Lewis, Randall Dionne, Eileen Timmerman, Norman Dionne, Cynthia Larson, and Damian Dionne.   Ardis Dionne was also survived by James Goodness, who she claimed as her husband, even though they were never legally married.   At the time of her death, Ardis Dionne owned a 1/4 interest in some

land in Mountrail County. Norman Dionne was appointed the personal representative of the estate, and instituted an intestate probate proceeding. A holographic will signed by Ardis Dionne was found in 2001. The will left all of Ardis Dionne's property, including the real estate, to James Goodness.

[¶ 3] Goodness continued to live in Hawaii after Ardis Dionne's death. Because Ardis Dionne's children wanted to ensure the real estate stayed in the family, Norman Dionne and Cynthia Larson traveled to Hawaii in April of 2002 to meet with Goodness and attempt to persuade him to transfer or sell the real estate to them. While meeting with Norman Dionne and Cynthia Larson in Hawaii, Goodness told them he did not want the real estate. Goodness signed a deed that provided:

> That the personal representative shall deal with the assets of the estate and distribute the estate in the following manner:
> a. The estate's interest in all of the above described real estate shall be conveyed to Norman Dionne for $_____.
> b. After paying administration expenses and creditor's claims, if any, all of the remaining assets of the estate (including the proceeds from the sale of the land) shall be distributed to James Goodness.

Handwritten in the blank space in paragraph a was "1.00," and in paragraph b, "James Goodness" was crossed out and "Norman for maintenance, 4/25/02" was handwritten in. Goodness and all of Ardis Dionne's children signed the deed. Subsequently, Norman Dionne, as personal representative of the estate, issued a deed to himself in his individual capacity.

[¶ 4] In 2008, Randall Dionne and Cynthia Larson filed a petition to void the personal representative's deed Norman Dionne had issued to himself and to transfer the land back into the estate for distribution. Randall Dionne and Cynthia Larson claimed the parties did not intend all of the land to go to Norman Dionne when James Goodness signed the deed giving up his interest in the land. They claimed the land was supposed to be kept by the estate until Ardis Dionne's mother died, and then be distributed to all six children equally. The district court dismissed the petition on summary judgment, ruling the deed unambiguously transferred the property to Norman Dionne. Randall Dionne and Cynthia Larson appealed, and this Court reversed and remanded for a trial, ruling the deed was ambiguous and summary judgment was inappropriate. *Estate of Dionne*, 2009 ND 172, ¶ 1, 772 N.W.2d 891.

[¶ 5] In May 2010, after the case was remanded, James Goodness was joined as a petitioner in the action. In June 2010, after a deposition, he entered into a stipulation to dismiss his petition. The district court dismissed Goodness's petition with prejudice. From the time Goodness entered the case, through his stipulation to dismiss his petition, Goodness was represented by the same attorney as Randall Dionne and Cynthia Larson.

[¶ 6] A bench trial was held to determine the intent of the parties that signed the deed. The district court found the intent of the parties was that the entire property would go to Norman Dionne. Randall Dionne and Cynthia Larson appealed, and we affirmed the district court's decision. *Estate of Dionne*, 2011 ND 97, ¶ 1, 799 N.W.2d 406.

[¶ 7] In September of 2011, Randall Dionne and Cynthia Larson filed a new petition on behalf of themselves and on behalf of James Goodness, for whom Randall Dionne, Cynthia Larson, and Cynthia Larson's husband now have power of attorney. The new petition sought formal

probate of Ardis Dionne's will. The petitioners also sought a change of venue and to disqualify Judge David Nelson, who presided over the previous petition. Norman Dionne filed a N.D.R.Civ.P. 12(b)(vi) motion and opposed changing the venue and disqualifying Judge Nelson. Judge William McLees ruled that disqualification of Judge Nelson was not appropriate, and denied the petitioners' request for a change of judge.

[¶ 8] In February 2012, the petitioners filed a Rule 60(b) motion to vacate the June 2010 order dismissing Goodness's petition. In the motion, the petitioners claimed Norman Dionne obtained the stipulation to dismiss the petition by fraud, and therefore it should be set aside and Goodness should be allowed to go forward with his claim. Norman Dionne opposed the motion, arguing the motion was time barred, and that granting the motion would be futile because all of the claims of the petition had already been determined. The petitioners also filed a motion to amend to add a claim of fraud against Norman Dionne, claiming he concealed the will from them and repeatedly lied about the existence of a will.

[¶ 9] The district court held a hearing to dispose all of the motions in the case, including the Rule 12(b)(vi) motion and the Rule 60(b) motion. The district court granted Norman Dionne's Rule 12(b)(vi) motion and dismissed the petition, ruling that all of the petitioners' claims were previously determined and therefore were barred by res judicata and collateral estoppel. The district court also denied the petitioners' Rule 60(b) motion, concluding Goodness knew what he was doing and was represented by competent counsel.

## II.

[¶ 10] The petitioners argue the district court erred by denying their petition and their motion to amend their petition because the will has not been probated, and property subject to the will cannot be distributed until the will has been probated. Norman Dionne argues the issue is barred by res judicata and collateral estoppel. The district court held the matter had already been decided by the decision that the 2002 agreement transferred all of the property to Norman Dionne, and granted Norman Dionne's Rule 12(b)(vi) motion.

[¶ 11] "A motion to dismiss a complaint under N.D.R.Civ.P. 12(b)(vi) tests 'the legal sufficiency of the statement of the claim presented in the complaint.'" *Hale v. State*, 2012 ND 148, ¶ 13, 818 N.W.2d 684 (quoting *Ziegelmann v. DaimlerChrysler Corp.*, 2002 ND 134, ¶ 5, 649 N.W.2d 556). "Under N.D.R.Civ.P. 12(b)(vi), a 'complaint should not be dismissed unless it is disclosed with certainty the impossibility of proving a claim upon which relief can be granted.'" *Hale*, at ¶ 13 (quoting *Ziegelmann*, at ¶ 5). On appeal, the complaint must be construed "'in the light most favorable to the plaintiff, taking as true the well-pleaded allegations in the complaint.'" *Hale*, at ¶ 13 (quoting *Ziegelmann*, at ¶ 5). "We will affirm a judgment dismissing a complaint for failure to state a claim if we cannot 'discern a potential for proof to support it.'" *Hale*, at ¶ 13 (quoting *Ziegelmann*, at ¶ 5).

[¶ 12] Res judicata and collateral estoppel bar re-litigation of claims and issues that have already been decided. *Ungar v. N.D. State Univ.*, 2006 ND 185, ¶ 10, 721 N.W.2d 16. The purpose is to "promote the finality of judgments, which increases certainty, avoids multiple litigation, wasteful delay and expense, and ultimately conserves judicial resources." *Id.* The doctrine of res judicata precludes claims that have been raised or could have been raised in an action between the par-

ties or their privies. *Id.* at ¶ 11. This applies even if the subsequent claim is based on a different legal theory. *Id.* Collateral estoppel, or issue preclusion, bars "relitigation of issues of either fact or law in a second action based on a different claim, which were necessarily litigated [between the parties]." *Id.*

[¶ 13] "It is a well-settled principle of law that, when free from fraud and misrepresentations, courts will look with favor upon family agreements in settlement of estates." *Johnson v. Tomlinson,* 160 N.W.2d 49, 57 (N.D.1968). "The North Dakota Uniform Probate Code makes certain agreements among successors binding on an estate's personal representative and provides a procedure for making compromise agreements binding by securing court approval." *In re Estate of Harms,* 2012 ND 62, ¶ 12, 814 N.W.2d 783. Section 30.1–20–12, N.D.C.C., provides:

> competent successors may agree among themselves to alter the interests, shares, or amounts to which they are entitled under the will of the decedent, or under the laws of intestacy, in any way that they provide in a written contract executed by all who are affected by its provisions. The personal representative shall abide by the terms of the agreement subject to the personal representative's obligation to administer the estate for the benefit of creditors, to pay all taxes and costs of administration, and to carry out the responsibilities of the personal representative's office for the benefit of any successors of the decedent who are not parties.

Here, after a bench trial, the district court found that James Goodness, Cynthia Larson, Randall Dionne, and the other children of Ardis Dionne entered into a distribution agreement directing the personal representative to deed the property to Norman Dionne. The district court found the parties intended the distribution agreement to distribute all the property to Norman Dionne, including all mineral interests. We affirmed this decision. *Estate of Dionne,* 2011 ND 97, ¶ 1, 799 N.W.2d 406. This issue is res judicata, and the petitioners are barred from raising it in a new action.

[¶ 14] Under section 30.1–20–12, this agreement was binding on the personal representative of Ardis Dionne's estate, Norman Dionne. He was required by law to distribute the property according to the distribution agreement, rather than the dictates of the holographic will or intestate succession. Whether the will is valid is irrelevant because the personal representative would still be required to distribute the estate according to the distribution agreement. Admitting the will to probate would be an exercise in futility. The purpose of admitting a will to probate is to determine whether the will is valid. Here, if the will is valid, James Goodness is the sole beneficiary, and James Goodness signed a valid distribution agreement transferring his whole interest in the property to Norman Dionne. If the will is not valid, the property passes by intestacy equally to all of Ardis Dionne's children, who also signed a valid distribution agreement transferring their whole interest in the property to Norman Dionne. There is no reason to admit the will to probate. The district court properly granted Norman Dionne's Rule 12(b)(vi) motion and dismissed the petition.

### III.

[¶ 15] The remaining arguments raised by the appellants are without merit. The judgment is affirmed. The appellee's request for costs and attorney's fees is denied.

560

[¶ 16] DALE V. SANDSTROM, BRUCE E. BOHLMAN, S.J., ALLAN L. SCHMALENBERGER, S.J., and GEORGIA DAWSON, S.J., concur.

[¶ 17] The Honorable ALLAN L. SCHMALENBERGER, S.J., the Honorable BRUCE E. BOHLMAN, S.J., and the Honorable GEORGIA DAWSON, S.J., sitting in place of MARING, J., KAPSNER, J., and CROTHERS, J., disqualified.