2015 ND 253

**In the Matter of the ESTATE OF Donald G. AMUNDSON, Deceased.**

and

**In the Matter of Donald G. Amundson Trust**

**Gladys Gleason, Petitioner**

v.

**Debra Amundson Magers, Personal Representative; Andrea Rebman; Colin Leibold; Glen Rebman; Brent Amundson; Jacob Leibold; Carolyn Rebman; Eric Rebman; Charlene Leibold; Scott Amundson, Respondents**

**John Widdel, Jr., Interested Party and Appellant**

**Andrea Rebman; Colin Leibold; Glen Rebman; Jacob Leibold; Carolyn Rebman; Eric Rebman; Charlene Leibold, Appellees.**

No. 20150046.

Supreme Court of North Dakota.

Oct. 13, 2015.

Sara K. Sorenson (argued) and Andrew D. Cook (on brief), West Fargo, N.D., for appellees.

Clint D. Morgenstern, Grand Forks, N.D., for appellant.

SANDSTROM, Justice.

[¶ 1] John Widdel, Jr., appeals from a district court judgment ordering him to repay $95,000 of the attorney's fees he charged in the administration of the Donald G. Amundson Estate. He argues the district court abused its discretion in finding the attorney's fees were unreasonable. Widdel also argues the district court abused its discretion by not holding an

evidentiary hearing on the issue of substituting his professional corporation as the named party on the judgment. We affirm the judgment of the district court, concluding the district court did not abuse its discretion in finding the fees charged by Widdel were unreasonable and in finding Widdel could properly be held personally liable on the judgment.

I

[¶ 2] The last will and testament of Donald G. Amundson provided for his entire estate to be distributed to the Donald G. Amundson Trust. The Trust owned farmland jointly with the Kenneth Amundson Trust, which was set up by Donald Amundson's brother. Donald Amundson's Trust declaration directed the Trust assets were to be distributed upon his death to four charities, with the remainder distributed to ten nieces and nephews. Amundson died in September of 2011. Debra Magers and Gladys Gleason were initially appointed as co-personal representatives of the Estate. Magers, Gleason, and Todd Graveline were appointed as co-trustees of the Trust. Widdel represented all parties in relation to the administration of the estate. Magers eventually became sole personal representative and trustee of the Trust and Estate.

[¶ 3] In August 2013, the beneficiaries of the Estate petitioned for court determination of reasonableness of fees and for settlement and distribution of estate. The petition objected to the fees charged by Magers and Widdel for their services to the Estate and Trust. In September 2014, the district court found Magers had breached her fiduciary duty in several ways, which included paying Widdel large fees without question. The court also found administration of the Estate and Trust was not complicated and Widdel's fees were unreasonable in light of the na-

ture of the work performed. The court ordered Widdel to return attorney's fees in the amount of $95,000.

[¶ 4] Widdel moved to amend the judgment, substituting the party named in the judgment from himself to his professional corporation, Law Offices—North Dakota. In January 2015, the court denied Widdel's motion, concluding his one-lawyer professional organization did not relieve him of being held personally liable. The court further ordered that if Widdel failed to repay the fees, his professional corporation would be added to the judgment. In February 2015, after Widdel did not make payment, a supplemental judgment was entered against both Widdel personally and Law Offices—North Dakota jointly and severally in the amount of $95,000.

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 6] Widdel argues the district court abused its discretion in finding the amount of attorney's fees collected was unreasonable. He argues the district court did not properly consider all of the evidence in reaching its decision, nor did it properly explain how its decision was made.

[¶ 7] Personal representatives of estates or trusts are entitled to receive reasonable compensation for the services they provide. N.D.C.C. § 30.1–18–19; *Estate of Gleeson*, 2002 ND 211, ¶ 21, 655 N.W.2d 69. The personal representative is also "authorized to hire attorneys to assist in administration of the estate and to defend or prosecute proceedings." *Estate of Cashmore*, 2010 ND 159, ¶ 20, 787 N.W.2d 261 (citing N.D.C.C. §§ 30.1–18–

15(21) and 30.1–18–20). Under N.D.C.C. § 30.1–18–21, the district court has the ability to review the reasonableness of compensation of an attorney. "The review of fees paid or taken by the personal representative is left to the sound discretion of the district court." *Cashmore*, at ¶ 19 (citing *Estate of Peterson*, 1997 ND 48, ¶ 18, 561 N.W.2d 618). "The district court is considered an expert in determining the value of reasonable attorney's fees for services rendered to an estate." *Id.* at ¶ 20. "The determination . . . is left in the sound discretion of the district court, and we will not reverse the district court's determination on attorney's fees absent a clear abuse of discretion." *Id.* "A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law." *Id.* at ¶ 21.

[¶ 8] Widdel argues the district court's calculation of attorney's fees is erroneous because the court failed to take into consideration evidence of his hourly expense reports. Instead, he argues, the court relied on testimony of witnesses suggesting what a typical probate case should or would have cost.

[¶ 9] The court explained its reasoning by discussing how administration of the Estate was not complicated. The court specifically stated it reviewed all transcripts in the proceedings. The court found the majority of Amundson's assets, both in the Trust and Estate, consisted of Payable on Death ("P.O.D.") accounts, farmland, and a promissory note from Brent Amundson, one of the beneficiaries. The sale of the farmland was handled by a separate company, and the closing and preparation of deeds for the sale of the farmland was prepared by the German Law Group. The P.O.D. accounts were non-probate assets and did not require administration by the Estate or Trust.

The note receivable from Brent Amundson was not acted upon by Magers or Widdel, as they took no action to collect on the note. The Estate and Trust did owe income taxes due to rent on the farmland before it was sold and capital gains taxes on the sale of the farmland. Widdel prepared one return for the Estate to report the rent on the farmland. The returns to report the capital gains taxes on the sale of the farmland were prepared by CPA Kevin Austin. Widdel did not handle any litigation involved with the Estate, as that was handled by a different attorney.

[¶ 10] The court also heard testimony from attorneys Nicholas Vogel and Daniel Buchanan regarding the fees charged by Widdel. Both attorneys agreed administration of the Estate was not complicated. The district court agreed it was not a complex administration. The court explained how Widdel charged extremely high and disproportionate fees despite the uncomplicated nature of the work required.

[¶ 11] The court cited several specific examples of Widdel's unreasonable fees. Widdel prepared only one tax return, charging 11 hours at a rate of $250 per hour plus a $450 document charge, for a total of $3,200. CPA Austin and attorney Vogel both testified the most they would charge for this work would be $500. The court also found Widdel failed to use paralegals, who could charge a lower rate, and who would typically handle 50% or more of the time involved in a probate matter. The court found both Magers and Widdel each were paid approximately $22,000 for the administration of the Kenneth Amundson Trust, which involved the same work for which they were seeking payment in this case. Attorney Buchanan testified that after reviewing the breaches of trust by Magers and the amount of money already paid to Widdel from the Kenneth

Amundson Trust, Widdel should not have been paid more than the approximately $22,000 he was paid from that Trust. The court found Widdel had also been paid nearly $103,000 out of the Trust and Estate for Donald Amundson, which Buchanan testified was unreasonable given the circumstances. Widdel based these amounts on a fee of three percent of the total assets of the Trust and Estate (both probate and non-probate assets). Vogel testified it was inappropriate to charge anything over one or one and one-half percent of the Estate when no litigation work was performed by Widdel and non-probate assets should not even be included in the calculation, because no work is required for their distribution. Lastly, the court found Widdel spent far more time on the Estate than was required to complete the job, and a substantial portion of his costs were secretarial in nature. Finding these charges to be inappropriate, and considering all of the above evidence, the court determined Widdel's fees in administering the Estate were unreasonable.

[¶ 12] On the basis of these findings by the district court, there is sufficient evidence in the record suggesting that the fees Widdel charged in administration of the Estate were unreasonable. Although the court may not have specifically mentioned in its findings every single piece of evidence presented by the parties, we presume the district court considered all the evidence presented. *Olson v. Olson*, 2000 ND 120, ¶ 7, 611 N.W.2d 892; *State v. Syvertson*, 1999 ND 134, ¶ 21 n. 3, 597 N.W.2d 652 ("[A] trial court is presumed to have done its duty."). When reviewing a trial court's findings of fact, which are presumptively correct, we view the evidence in the light most favorable to the findings. *Schmaltz v. Schmaltz*, 1998 ND 212, ¶ 6, 586 N.W.2d 852. Furthermore, the district court is considered an expert when it comes to determining the value of reasonable attorney's fees. *Estate of Cashmore*, 2010 ND 159, ¶ 20, 787 N.W.2d 261. Evidence in the record supports the district court's decision on the unreasonableness of Widdel's fees. The district court did not abuse its discretion in determining his fees were unreasonable.

### III

[¶ 13] Widdel also argues the district court abused its discretion by not allowing a hearing on the issue of substituting his professional corporation for himself as the named party on the judgment. After the court entered judgment against Widdel, he moved to amend the judgment under N.D.R.Civ.P. 59(j), seeking to substitute his professional corporation, Law Offices—North Dakota, as the named party on the judgment. He contends he was not allowed an independent hearing on this motion to argue the issue of limiting his liability.

[¶ 14] "The decision on a motion to amend a judgment under Rule 59(j) rests in the trial court's sound discretion and will not be reversed on appeal unless there is a manifest abuse of discretion." *Woodworth v. Chillemi*, 1999 ND 43, ¶ 7, 590 N.W.2d 446. "A trial court abuses its discretion when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Id.* Under N.D.R.Ct. 3.2(a)(3), "[i]f any party who has timely served and filed a brief [under a motion to amend judgment] requests oral argument, the request must be granted.... Requests for oral argument or the taking of testimony must be made not later than seven days after expiration of the time for filing the answer brief." "Generally, when a party files a motion in district court, the party is required to request a hearing on the motion and comply

with other procedural requirements or the motion will be decided on the briefs." *State v. Parizek*, 2012 ND 103, ¶ 8, 816 N.W.2d 799.

[¶ 15] The record reflects Widdel did not request a hearing on his motion to amend judgment. Widdel gave notice of his motion under N.D.R.Ct. 3.2, clearly stating, "This Motion will be decided on briefs unless oral argument is timely requested. At this time, Movant does not request oral argument." Nothing in the record reflects a request subsequent to Widdel's notice of motion.

[¶ 16] Furthermore, it appears the district court did, in fact, schedule and hold a hearing on Widdel's motion. After receiving Widdel's notice, notice was given of a hearing on the motion to be heard October 22, 2014. The Rebman and Leibold families moved for an order to show cause regarding Widdel's failure to repay the unreasonable fees, which was also set to be heard on the same day. The hearing was continued until December 3, 2014. Notice was given of the continued hearing on November 19, 2014. The hearing was subsequently held on December 3, 2014, regarding both pending motions.

[¶ 17] Nothing required the district court to hold an independent hearing on Widdel's motion to amend judgment, separate from the hearing on the families' motion for order to show cause. On the contrary, it made sense for the court to hear both motions since they both involved Widdel's personal responsibility to repay the unreasonable fees. Nevertheless, the court made clear during the December 3 hearing that it would refrain from making a ruling on the motion for order to show cause until a decision had been made regarding Widdel's motion to amend judgment. After allowing Widdel to make his argument regarding the motion to amend judgment at the hearing, the court issued its order denying the motion. The basis of Widdel's argument for a hearing is difficult to understand when he apparently received the very hearing of which he claims he was deprived and did not request.

[¶ 18] Widdel also argues the merits of the district court's decision on the motion, claiming he should be shielded from personal responsibility on the judgment. He essentially argues the district court abused its discretion in bypassing a piercing of the corporate veil analysis and in extending corporate liability to himself personally.

[¶ 19] There are many benefits provided to licensed professionals who choose to practice in the form of a professional services corporation. Much of the legislation involving professional corporations throughout the United States was enacted to allow professionals to incorporate and receive certain tax and corporate advantages not previously allowed to individual taxpayers or partnerships. *See Petition of New Hampshire Bar Ass'n*, 110 N.H. 356, 266 A.2d 853, 854 (1970); *see also Petition of Bar Ass'n of Hawaii*, 55 Haw. 121, 516 P.2d 1267, 1268 (1973) ("The basic reason for establishment of professional corporations is to place professional persons on parity with persons in other business corporations who are favored with tax benefits under the Internal Revenue Code."). Professional corporations also provide limited personal liability for obligations of the professional corporation that are unrelated to the rendering of professional services. Officers and directors of a corporation are generally not personally liable for the debts of the corporation. *Coughlin Constr. Co. v. Nu-Tec Industries, Inc.*, 2008 ND 163, ¶ 19, 755 N.W.2d 867 (citing *Axtmann v. Chillemi*, 2007 ND 179, ¶ 12, 740 N.W.2d 838). "Organizing a corporation to avoid personal liability is a legitimate goal and is one of the primary

advantages of doing business in the corporate form." *Chillemi*, at ¶ 12. There is no clear authority, however, articulating whether such a limitation of personal liability exists for a *professional* corporation organized specifically for the purpose of engaging in the practice of law.

[¶ 20] The North Dakota Professional Organizations Act provides that the relationship between a person providing professional service and a person receiving such service, including any liability arising out of the professional service, is not altered by use of a professional organization. *See* N.D.C.C. § 10–31–09(1). Subsection 3 states, "Nothing in this chapter restricts or limits in any manner the authority and duty of the regulating boards for the licensing of an individual rendering professional services." N.D.C.C. § 10–31–09(3). Finally, subsection 4 states, "No professional organization may do any act that is prohibited to be done by any individual licensed to practice the profession which the professional organization is created to render." N.D.C.C. § 10–31–09(4). This statute appears to create an important distinction between professional corporations and non-professional business corporations. The legislature did not intend to alter any liability or any relationship of a licensed professional with the individual receiving the professional services. Therefore, under North Dakota law, the corporate status of a professional entity does not relieve the individual professional from his or her obligation to abide by all the rules and requirements of professional ethics and the standards of conduct the profession requires.

[¶ 21] This is similar to the expectations of professional corporations expressed by courts in other states. *See American Nat'l Bank & Trust Co. of Shawnee v. Clarke & Van Wagner, Inc.*, 692 P.2d 61, 67–68 (Okla.Civ.App.1984)

("The professional corporation was never intended as a shield to protect individual attorneys from liability for their actions."). *See also Petition of New Hampshire Bar Association*, 110 N.H. 356, 266 A.2d 853, 854 (1970) ("All attorneys as well as the professional association itself [are] subject to the disciplinary powers of the court. The professional association places no barrier between the authority of the court and the individual practitioner."). In *In re Florida Bar*, 133 So.2d 554, 556 (Fla.1961), the Florida Supreme Court stated:

[T]he highly personal obligation of the lawyer to his client is in no way adversely affected. The individual practitioner, whether a stockholder in a corporation or otherwise, will continue to be expected to abide by all of the Rules and Canons of professional ethics heretofore or hereafter required of him. The corporate entity as a method of doing business will not be permitted to protect the unfaithful or the unethical. As a matter of fact, the corporate entity itself will automatically come within the ambit of our jurisdiction in regard to discipline. In addition to the individual liability and responsibility of the stockholder, the corporate entity will be liable for the misprisions of its members to the extent of the corporate assets.

[¶ 22] The professional nature of the legal profession and its obligation to the public interest require that every lawyer be responsible for his or her professional acts. As stated by the Florida Supreme Court:

Traditionally, prohibition against the practice of a profession through the corporate entity has been grounded on the essentially personal relationship existing between the lawyer and his client, or the doctor and his patient. This necessary personal relationship imposes upon the lawyer a standard of duty and responsi-

bility which does not apply in the ordinary commercial relationship. The noncorporate status of the lawyer was deemed necessary in order to preserve to the client the benefits of a highly confidential relationship, based upon personal confidence, ability, and integrity.

*In re Florida Bar,* 133 So.2d 554, 556 (Fla.1961). When a client engages the services of a lawyer, whether that lawyer is acting through the form of a professional organization or otherwise, the client has the right to expect preservation of a highly confidential relationship rooted in confidence, integrity, and professionalism. Such are the requirements expected of an officer of the court. Under the circumstances of this case, it would be inappropriate for Widdel to be allowed to hide behind the corporate veil and thus escape the professional and ethical requirements demanded by his profession.

■ [¶ 23] This is not to say that an attorney practicing in a professional corporation is liable for any and all obligations of the corporation. Such a requirement would surely eliminate one of the many advantages of forming a professional organization in the first instance. *See, e.g., Schnapp, Hochberg & Sommers v. Nislow,* 106 Misc.2d 194, 431 N.Y.S.2d 324 (N.Y. Trial Term, 1980) ("[T]he professional corporate entity, unlike the business corporate entity, does not exist to shield the individual professional corporate shareholder from liability or accountability for his wrongful act or misconduct arising out of the rendition of 'his' professional services.... That this personal liability should be extended to include nonprofessional activities such as business debts or miscellaneous obligations of the corporation ... on the other hand defies logic and lacks support in statute or at law."). Therefore, we hold that lawyers practicing in a professional corporation still owe duties to clients and remain personally liable to them for acts of improper or unethical behavior that are related to the rendering of the professional legal service. For obligations of the corporation that are unrelated to the rendering of professional services, the attorney has limited liability.

■ [¶ 24] Attorneys in North Dakota are prohibited from charging an unreasonable fee. *See* N.D.R.Prof. Conduct 1.5(a) ("A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses."). Under this rule, every lawyer has an obligation to his or her client to refrain from charging unreasonable fees. Responsibility for doing so cannot be shifted to the lawyer's professional corporation to avoid liability for the amount of fees deemed unreasonable. Therefore, the Professional Organizations Act, N.D.C.C. § 10–31–09, precludes using a professional corporation to shelter individual attorneys from liability for their own misconduct. Further, the statute relied upon by the district court in awarding compensation of Widdel's unreasonable fees in this case makes no distinction between an attorney and his or her professional corporation. *See* N.D.C.C. § 30.1–18–21 ("Any person who has received excessive compensation from an estate for services rendered may be ordered to make appropriate refunds.").

[¶ 25] In this case the district court considered the evidence and testimony before it and determined the fees collected by Widdel in his service to the Estate, as an attorney, were unreasonable. The district court did not abuse its discretion in determining the fees were unreasonable. The district court did not misinterpret or misapply the law in holding Widdel personally responsible for the unreasonable fees he charged.

[¶ 26]   Because Widdel did not request a hearing on his motion to amend judgment, and because the district court did, in fact, give him an opportunity to be heard on the motion, the district court did not abuse its discretion in denying his motion. Nor did the court abuse its discretion in determining Widdel could be held personally liable for the excessive attorney's fees he charged.   Under these circumstances, the district court's decision denying Widdel's motion to amend judgment was proper.

IV

[¶ 27]   Because the district court properly exercised its discretion in determining the fees charged by Widdel were unreasonable, and because it held a hearing regarding the motion to amend judgment and properly exercised its discretion in holding Widdel personally liable on the judgment, we affirm the judgment of the district court.

[¶ 28]   GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DANIEL J. CROTHERS and LISA FAIR McEVERS, JJ., concur.