# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 22

PHI Financial Services, Inc.       Plaintiff and Appellee

  v.

Johnston Law Office, P.C.,      Defendant and Appellant

  and

Choice Financial Group,        Defendant

  and

N.Starr, LLC, Lee Finstad, and Jeff Trosen,  Garnishees and Appellants

## No. 20180330

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Steven E. McCullough, Judge.

and

Johnston Law Office, P.C.,

a North Dakota professional corporation,   Plaintiff and Appellant

  v.

Jon Brakke, an attorney at law,

and Vogel Law Firm, Ltd., a North Dakota

professional corporation, and PHI Financial

Services, Inc., an Iowa corporation,   Defendants and Appellees

## No. 20190001

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Lonnie Olson, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Joseph A. Wetch (argued) and Ian McLean (on brief), Fargo, ND, for plaintiff and appellee PHI Financial Services, Inc.

DeWayne A. Johnston (argued) and David C. Thompson (appeared), Grand Forks, ND, for defendant and appellant Johnston Law Office, P.C.

Drew J. Hushka (argued) and Jon R. Brakke (on brief), Fargo, ND, for defendants and appellees Jon Brakke and Vogel Law Firm, Ltd.

**Crothers, Justice.**

[¶1] In these consolidated appeals, garnishees N.Starr, LLC; Lee Finstad; and Jeff Trosen appeal from a Grand Forks County district court order dismissing their counterclaims in a garnishment proceeding, and Johnston Law Office, P.C. ("Johnston Law") appeals from a Cass County district court order dismissing its action. Both orders dismissed their respective claims in each case against PHI Financial Services, Inc. ("PHI") and Jon Brakke and the Vogel Law Firm, Ltd. (collectively, "Vogel Law"). We affirm the orders.

I

[¶2] Our decisions set forth the history of this litigation and related cases. *See Johnston Law Office, P.C. v. Brakke*, 2018 ND 247, 919 N.W.2d 733; *PHI Fin. Servs., Inc. v. Johnston Law Office, P.C.*, 2016 ND 20, 874 N.W.2d 910; *PHI Fin. Servs., Inc. v. Johnston Law Office, P.C.*, 2016 ND 114, 881 N.W.2d 216. These cases contain relevant factual background, which we will not repeat here except as necessary to resolve the issues raised in this appeal.

[¶3] In the Grand Forks County case, Vogel Law represented PHI in an action against Johnston Law to recover damages for a fraudulent transfer. In 2015 the district court entered a judgment against Johnston Law for approximately $167,000. PHI began post-judgment collection efforts, which included serving garnishment summonses. In December 2017, PHI, through its counsel Vogel Law, served garnishee summonses on N.Starr, Finstad, and Trosen.

[¶4] In March 2018, garnishees N.Starr, Finstad, and Trosen brought counterclaims in the garnishment proceedings, asserting claims of abuse of process and vicarious liability. Vogel Law and PHI moved the district court to dismiss the garnishees' counterclaims. In a July 2018 order, the Grand Forks district court dismissed the counterclaims, holding the garnishees failed to allege any claim upon which relief can be granted. The garnishees appealed the order dismissing their counterclaims.

[¶5]   In the Cass County case, Johnston Law commenced an action against Vogel Law and PHI in March 2018, asserting claims for abuse of process, tortious interference with a business relationship, and conversion. Johnston Law also asserted a claim against PHI for vicarious liability. Vogel Law and PHI moved to dismiss the complaint. In a December 2018 order, the Cass County court granted Vogel Law and PHI's motion to dismiss, holding Johnston Law failed to allege any claim upon which relief can be granted.

## II

[¶6]   Our standard for reviewing a decision dismissing a complaint under N.D.R.Civ.P. 12(b)(6) for failure to state a claim is well established:

> "A motion to dismiss a complaint under N.D.R.Civ.P. 12(b)([6]) tests the legal sufficiency of the statement of the claim presented in the complaint. Under N.D.R.Civ.P. 12(b)([6]), a complaint should not be dismissed unless it is disclosed with certainty the impossibility of proving a claim upon which relief can be granted. On appeal, the complaint must be construed in the light most favorable to the plaintiff, taking as true the well-pleaded allegations in the complaint."

*In re Estate of Dionne*, 2013 ND 40, ¶ 11, 827 N.W.2d 555 (internal quotation marks and citations omitted). The district court's decision granting a dismissal for failure to state a claim upon which relief can be granted under N.D.R.Civ.P. 12(b)(6) will be affirmed "if we cannot 'discern a potential for proof to support it.'" *Id.* (quoting *Hale v. State*, 2012 ND 148, ¶ 13, 818 N.W.2d 684); *see also Vandall v. Trinity Hosps.*, 2004 ND 47, ¶ 5, 676 N.W.2d 88; *Towne v. Dinius*, 1997 ND 125, ¶ 7, 565 N.W.2d 762. Our review of the court's decision under N.D.R.Civ.P. 12(b)(6) is de novo. *In re Estate of Nelson*, 2015 ND 122, ¶ 5, 863 N.W.2d 521.

## III

[¶7]   Johnston Law argues both district courts erred in dismissing its claims for abuse of process for failure to state a claim because both misinterpreted

2

N.D.C.C. § 32-09.1-04, which requires ten days' notice before a garnishee summons may be issued.[1]

[¶8]   Generally, an "[a]buse of process occurs when a person uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed." *Riemers v. Hill*, 2016 ND 137, ¶ 22, 881 N.W.2d 624 (quoting *Jordet v. Jordet*, 2015 ND 76, ¶ 20, 861 N.W.2d 147). "The two essential elements of an abuse-of-process claim are: (1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Riemers*, at ¶ 22.   "In cases involving abuse-of-process claims, our decisions require some overt act akin to extortion or attempting to obtain a collateral advantage beyond the issuance of the formal use of process." *Id.* (citing *Jordet*, at ¶ 20; *Wachter v. Gratech Co., Ltd.*, 2000 ND 62, ¶¶ 33-34, 608 N.W.2d 279; *Kummer v. City of Fargo*, 516 N.W.2d 294, 297-99 (N.D. 1994); *Volk v. Wisconsin Mortg. Assurance Co.*, 474 N.W.2d 40, 43-44 (N.D. 1991); *Stoner v. Nash Finch, Inc.*, 446 N.W.2d 747, 751-52 (N.D. 1989)).   We also said an abuse of process requires more than the formal use of process itself:

> "Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation,

---

[1] In its complaint Johnston Law relies on *Blair v. Maxbass Sec. Bank*, 44 N.D. 12, 17, 176 N.W. 98, 100 (1919), and claims PHI may be held liable for an abuse of process for Vogel Law's acts in serving garnishment summonses on Johnston Law's clients, alleging that PHI ratified Vogel Law's acts by not reputing or stopping the acts once PHI had knowledge of them.   Johnston Law, however, has not raised any issue on appeal regarding PHI's vicarious liability.   We therefore decline to address it. *See Bearce v. Yellowstone Energy Dev., LLC*, 2019 ND 89, ¶ 29, 924 N.W.2d 791 (failing to adequately brief and provide supporting argument on an issue waives it on appeal).

rather than the issuance or any formal use of the process itself, which constitutes the tort."

*Jordet*, at ¶ 20 (quoting *Stoner*, at 751).

[¶9] Johnston Law argues the district courts erred in dismissing the abuse-of-process claims by misinterpreting N.D.C.C. § 32-09.1-04, requiring ten days' notice before a garnishee summons may be issued. They assert that the defendants' failure to serve the ten-day notice before issuing the garnishee summons rendered the garnishment void. They contend this establishes their claim for abuse of process. Johnston Law's issue therefore requires us to construe N.D.C.C. § 32-09.1-04 to ascertain whether a ten-day notice before issuing a garnishee summons was required.

[¶10] We have discussed our rules for statutory interpretation:

"Interpretation of a statute is a question of law fully reviewable on appeal. Our primary goal in statutory construction is to ascertain the intent of the legislature, and we first look to the plain language of the statute and give each word of the statute its ordinary meaning. When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. If, however, the statute is ambiguous or if adherence to the strict letter of the statute would lead to an absurd or ludicrous result, a court may resort to extrinsic aids, such as legislative history, to interpret the statute. A statute is ambiguous if it is susceptible to meanings that are different, but rational. We presume the legislature did not intend an absurd or ludicrous result or unjust consequences, and we construe statutes in a practical manner, giving consideration to the context of the statutes and the purpose for which they were enacted."

*State v. G.C.H.*, 2019 ND 256, ¶ 13, 934 N.W.2d 857 (quoting *State v. Brown*, 2009 ND 150, ¶ 15, 771 N.W.2d 267). "Statutes relating to the same subject matter shall be construed together and should be harmonized, if possible, to give meaningful effect to each, without rendering one or the other useless." *G.C.H.*, at ¶ 13 (quoting *Brown*, at ¶ 15). Additionally, we have said "[a] dictionary may provide a reliable starting point in determining the meaning of

4

a word not previously defined." *Wilkens v. Westby*, 2019 ND 186, ¶ 8, 931 N.W.2d 229.

[¶11] Section 32-09.1-04(1), N.D.C.C., states in relevant part:

> "At least ten days before the issuance of *any garnishee summons against the earnings of any person*, the creditor shall serve upon the debtor a notice that a garnishee summons may be issued. . . . Failure to serve the notice renders any subsequent garnishment void."

(Emphasis added.) This section requires ten days' notice when the "earnings" of a "person" are to be garnished. A "person" includes a corporation. N.D.C.C. § 32-09.1-01(4). Section 32-09.1-01(3), N.D.C.C., defines "earnings":

> "'Earnings' means compensation paid or payable for personal services, *whether denominated as wages, salary, commission, bonus, or otherwise*, and includes periodic payments pursuant to a pension or retirement program. 'Earnings' does not include social security benefits or veterans' disability pension benefits, except when the benefits are subject to garnishment to enforce any order for the support of a dependent child. 'Earnings' includes military retirement pay."

(Emphasis added.) Although this definition is broad, the term "earnings" does not include "business profits." *Friedt v. Moseanko*, 498 N.W.2d 129, 133 (N.D. 1993).

[¶12] While Johnston Law as a professional corporation is a "person" under N.D.C.C. § 32-09.1-01(4), the fees that its clients would pay as "compensation" to Johnston Law are not wages, salary, commission, or bonus. We have relied on the principle of *ejusdem generis* to interpret statutory language:

> "Under the principle of *ejusdem generis*, general words following particular and specific words are not given their natural and ordinary sense, standing alone, but are confined to persons and things of the same kind or genus as those enumerated. In applying the rule of *ejusdem generis*, we must keep in mind the admonition that our primary purpose is always to carry out the intent of the legislature. The rule accomplishes the purpose of

5

giving effect to both the particular and the general words, by treating the particular words as indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words."

*City of W. Fargo v. Williams*, 2019 ND 161, ¶ 15, 930 N.W.2d 102 (quoting *Olson v. Job Serv. N.D.*, 2013 ND 24, ¶ 7, 827 N.W.2d 36). The remaining term "otherwise" in N.D.C.C. § 32-09.1-01(3), while broad, does not extend more generally beyond the items specifically listed.

[¶13] Additionally, one definition of "personal service" is "[a] beneficial or useful act performed on behalf of another by an individual personally. In this sense, a personal service is an economic service involving either the intellectual or manual personal effort of an individual, as opposed to the salable product of the person's skill." *Black's Law Dictionary* 1327 (10th ed. 2014). "Service" is defined as "[l]abor performed in the interest or under the direction of others; specif., the performance of some useful act or series of acts for the benefit of another, usu. for a fee <goods and services>. In this sense, *service* denotes an intangible commodity in the form of human effort, such as labor, skill, or advice." *Black's Law Dictionary* 1576 (10th ed. 2014). Both meanings focus on the individual's efforts or acts for another, rather than a separate entity's provision of an individual's services.

[¶14] In both the Grand Forks and Cass County cases, the district courts distinguished the fees a client pays to a law firm, which properly may be characterized as "business profits," from an amount a law firm might pay to a lawyer, which would be an example of "earnings." A clients' payment to a law firm could include things such as work performed by firm staff, costs incurred or advanced, and other firm overhead. We therefore conclude fees paid to a law firm are more accurately described as "business profits" rather than "compensation" paid or payable for "personal services."

[¶15] This conclusion comports with what we have said in the context of an attorney's liability when practicing in a professional corporation. In *In re Estate of Amundson*, 2015 ND 253, ¶ 23, 870 N.W.2d 208, we explained:

6

"This is not to say that an attorney practicing in a professional corporation is liable for any and all obligations of the corporation. Such a requirement would surely eliminate one of the many advantages of forming a professional organization in the first instance. *See, e.g., Schnapp, Hochberg & Sommers v. Nislow*, 106 Misc.2d 194, 431 N.Y.S.2d 324 (N.Y. Trial Term, 1980) ('[T]he professional corporate entity, unlike the business corporate entity, does not exist to shield the individual professional corporate shareholder from liability or accountability for his wrongful act or misconduct arising out of the rendition of "his" professional services. . . . That this personal liability should be extended to include nonprofessional activities such as business debts or miscellaneous obligations of the corporation . . . on the other hand defies logic and lacks support in statute or at law.'). Therefore, we hold that lawyers practicing in a professional corporation still owe duties to clients and remain personally liable to them for acts of improper or unethical behavior that are related to the rendering of the professional legal service. For obligations of the corporation that are unrelated to the rendering of professional services, the attorney has limited liability."

[¶16] In *Nusviken v. Johnston*, 2017 ND 22, ¶¶ 13-16, 890 N.W.2d 8, we declined to extend *Amundson's* holding that an attorney may be held personally liable under a judgment against an attorney's professional corporation. In *Nusviken*, no attorney-client relationship existed between the individual attorney and the judgment creditors. *Id.* at ¶ 16. We declined to extend *Amundson* to an attorney's improper or unethical actions toward parties who were not clients, and we modified the judgment to relieve the attorney of personal liability. *Id.*

[¶17] Under N.D.C.C. § 32-09.1-01(3), a client's payments to an attorney's professional corporation is not "compensation" paid or payable for "personal services." Because fees paid or payable to Johnston Law are not "earnings" under the statute, as a matter of law the ten-day notice was not required under N.D.C.C. § 32-09.1-04 before issuing the garnishee summons.

7

[¶18] Without a "willful improper act" alleged to support their claim for abuse of process, *see Jordet*, 2015 ND 76, ¶ 20, 861 N.W.2d 147, the district courts properly dismissed the garnishee summonses claims.

## IV

[¶19] Johnston Law argues it stated a claim for tortious interference with the attorney-client business relationship between Johnston Law and the law firm's clients when they were "improperly served" with garnishment summonses.

[¶20] In *Trade 'N Post, L.L.C. v. World Duty Free Ams., Inc.*, 2001 ND 116, ¶ 36, 628 N.W.2d 707, this Court provided the elements a plaintiff must prove to prevail on a tort claim for unlawful interference with business:

> "(1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an independently tortious or otherwise unlawful act of interference by the interferer; (4) proof that the interference caused the harm sustained; and (5) actual damages to the party whose relationship or expectancy was disrupted."

*See also Serv. Oil, Inc. v. Gjestvang*, 2015 ND 77, ¶ 40, 861 N.W.2d 490. This Court further held "the plaintiff must establish that the interfering conduct was independently tortious or otherwise in violation of state law." *Trade 'N Post,* at ¶ 43; *see also Schmitt v. MeritCare Health Sys.*, 2013 ND 136, ¶ 23, 834 N.W.2d 627 (stating "otherwise unlawful act of interference" means "otherwise in violation of state law").

[¶21] Johnston Law contends it sufficiently stated a claim for unlawful interference with business relationship because its clients were improperly served with a void garnishment. Johnston Law further argues that Vogel Law's serving the garnishment summonses on its clients constituted an improper, unauthorized ex parte direct communication with Johnston Law's individual clients in violation of N.D.R. Prof. Conduct 4.2 and that the garnishment documents purport to subvert the attorney-client relationship between Johnston Law and its clients.

[¶22] While Johnston Law contends that the Cass County district court erred in dismissing its claim for tortious interference with a business relationship, the gravamen of its complaint is the alleged improper, tortious, or unlawful act of serving a "void" garnishment summonses on the garnishee clients. We have held, however, that there was no violation of the notice requirement and that the subsequent garnishment was not void under N.D.C.C. § 32-09.1-04(1). We therefore conclude the complaint does not allege a viable tortious or otherwise unlawful act of interference.

[¶23] Johnston Law's attempt to rely on N.D.R. Prof. Conduct 4.2 to establish a tortious or unlawful act of interference also is unavailing. Rule 4.2, N.D.R.Prof. Conduct, provides:

> "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

[¶24] Here, serious doubt exists that a statutorily required summons is a "communication." *See Wilkerson v. Brown*, 995 P.3d 393 (Kan. Ct. App. 1999) (holding demands and offers of judgment required by statute to be served trigger "authorized by law" exception to Rule 4.2). Also, comment [2] of N.D.R. Prof. Conduct 4.2, further explains: "This Rule does not prohibit communication with a represented person, or an employee or agent of such a person, *concerning matters outside the representation*." (Emphasis added.) There is no allegation that the clients served with garnishee summonses were represented by Johnston Law in the matter between PHI and Johnston Law. Vogel Law's communication with Johnston Law's clients concerning matters outside the representation was thus not prohibited. Service of the garnishee summons as required by N.D.C.C. ch. 32-09.1 also likely is "authorized by law." Finally, an attorney ethics rule violation generally does not constitute a tortious or unlawful act. *See* N.D.R. Prof. Conduct, Scope [4] ("Violation of a rule should not itself give rise to a cause of action against a lawyer nor should it create a presumption in such a case that a legal duty has been breached.").

[¶25] Without an "independently tortious or otherwise unlawful act of interference," *see Trade 'N Post*, 2001 ND 116, ¶ 36, 628 N.W.2d 707, Johnston Law's claim against defendants for tortious interference with business relationship fails. The district court did not err in dismissing Johnston Law's claim under N.D.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

V

[¶26] Johnston Law argues it stated a claim for conversion against the defendants.

[¶27] Generally, "[w]hether a conversion has been committed is a finding of fact." *Jordet*, 2015 ND 76, ¶ 13, 861 N.W.2d 147. In *Gjestvang*, 2015 ND 77, ¶ 23, 861 N.W.2d 490, this Court discussed the requirements for a conversion claim:

> "A claim for conversion requires proof of 'a tortious detention or destruction of personal property, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the rights of the owner.' *Doeden v. Stubstad*, 2008 ND 165, ¶ 9, 755 N.W.2d 859 (quoting *Buri v. Ramsey*, 2005 ND 65, ¶ 14, 693 N.W.2d 619); *see Ritter, Laber and Assocs., Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 11, 680 N.W.2d 634; *Paxton v. Wiebe*, 1998 ND 169, ¶ 28, 584 N.W.2d 72. 'The gist of a conversion is not in acquiring the complainant's property, but in wrongfully depriving him of it, whether temporarily or permanently, and it is of little relevance that the converter received no benefit from such deprivation.' *Paxton*, at ¶ 28 (citations and quotation marks omitted). Conversion does not require bad intent on the converter's part; rather only an intent to control or interfere with the owner's rights to use to an actionable degree. *See Buri*, at ¶ 14; *Paxton*, at ¶ 28."

*See also Nelson v. Mattson*, 2018 ND 99, ¶ 24, 910 N.W.2d 171 ("Conversion is the 'tortious detention or destruction of personal property, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the rights of the owner.'").

10

[¶28] Johnston Law argues that it sufficiently stated a claim for conversion because the defendants improperly used garnishment to exercise dominion, control, or to temporarily or permanently interfere with Johnston Law's contract rights to property with its garnishee clients and with its lender United Valley Bank.

[¶29] Johnston Law broadly asserts that, to the extent fees owed by a client to Johnston Law were retainers, the garnishment "if effectuated" would constitute conversion of its clients' funds, since the fees would not have yet been earned. Johnston Law also asserts United Valley Bank possessed a perfected security interest superior to PHI's judgment execution rights in any fees. Johnston Law argues Vogel Law's use of garnishment in this manner caused the defendants to be liable for conversion and that it adequately stated claims for damages in its complaint.

[¶30] Here, the Cass County district court stated it was unclear whether conversion was pled as a separate tort claim or simply as an improper act for the claims of tortious interference with business relationship or abuse of process. In either event, the court concluded Johnston Law failed to allege any facts that the defendants actually exercised dominion or control over or deprived Johnston Law of any property, either temporarily or permanently. The court explained there was no factual allegations that any of Johnston Law's funds were held or transferred as a result of the issuance of the garnishee summonses. We agree.

[¶31] Under North Dakota law garnishment is allowed to collect on a judgment. *See* N.D.C.C. § 32-09.1-02. Johnston Law's complaint against the defendants fails to allege facts showing that any of its funds were held or transferred as a result of the issuance of the garnishee summonses. Even if Johnston Law alleged facts that Vogel Law and PHI received garnished fees, as previously discussed the garnishment itself was not tortious or unlawful. To the extent Johnson Law asserts facts were alleged to establish a conversion claim by the defendants' alleged wrongfully interfering with its bank's security rights in any fees, those property rights belong to the bank rather than Johnston Law.

11

[¶32] On the basis of our review, we cannot discern a potential for proof to support Johnston Law's claim for conversion.  Therefore, the district court did not err in dismissing its claim under N.D.R.Civ.P. 12(b)(6).

VI

[¶33] Johnston Law argues as a separate issue that the Cass County district court failed to apply the proper standard in dismissing its complaint for failure to state a claim.  Johnston Law asserts the court "[t]hroughout its decision" erroneously demanded "proof," effectively construing the complaint against Johnston Law.  Johnston Law further contends the defendants failed to demonstrate the impossibility of it proving a claim upon which relief can be granted or that is beyond a doubt that it can prove no set of facts in support of its claim which would entitle it to relief.  *See McColl Farms, LLC v. Pflaum*, 2013 ND 169, ¶¶ 12, 19, 837 N.W.2d 359.

[¶34]  In its December 2018 order dismissing Johnston Law's complaint under N.D.R.Civ.P. 12(b)(6), the district court concluded several times that the record was devoid of proof of harm or damages.  The court also stated no affidavit was filed to provide evidence of the legal sufficiency of the unlawful interference with business claim.  This analysis is inappropriate under the rule.  Nevertheless, our review of the district court's decision under N.D.R.Civ.P. 12(b)(6) is de novo, *see Estate of Nelson*, 2015 ND 122, ¶ 5, 863 N.W.2d 521.  "[A] correct result will not be set aside merely because the district court relied on a different reason for its decision." *City of Gwinner v. Vincent*, 2017 ND 82, ¶ 12, 892 N.W.2d 598; *see also N.D. Workers Comp. Bureau v. General Invest. Corp.*, 2000 ND 196, ¶ 14, 619 N.W.2d 863 ("We affirm the judgment, although for a different reason than that relied upon by the district court.").

[¶35] On the basis of our de novo review, the district court did not err in dismissing the claims under N.D.R.Civ.P. 12(b)(6).  We conclude the argument that the district court applied an improper standard in dismissing the complaint does not merit reversal of the court's order dismissing its claims.

12

# VII

[¶36] We have considered the parties' other arguments on appeal but consider them to be either unnecessary to our decision or without merit.  The orders are affirmed.

[¶37]  Daniel J. Crothers, Acting C.J.
Carol Ronning Kapsner, S.J.
Gerald W. VandeWalle
Jerod E. Tufte
William A. Neumann, S.J.

[¶38] The Honorable William A. Neumann, S.J., sitting in place of Jensen, C.J., disqualified.

[¶39] The Honorable Carol R. Kapsner, S.J., sitting in place of McEvers, J., disqualified.